PEOPLE v VERMEULEN

Docket No. 81558. Argued April 6, 1988 (Calendar No. 3). Decided March 8, 1989.

. John A. Vermeulen was charged in the Oakland Circuit Court with the first-degree murder of Urime Lewis, whom he had married before his divorce from Sharon Vermeulen became final. The court, Fred M. Mester, J., granted the people's motion in limine to allow admission of the testimony of Sharon Vermeulen regarding statements made by the defendant that he intended to kill Urime Lewis, so as to refute the defendant's claim that the death was an accident arising out of the defendant's attempted suicide. The court stated that since the marital relationship essentially had long ceased to exist, the statements made by the defendant to his wife were not confidential. The Court of Appeals, HOLBROOK, JR., P.J., and HOOD and MAHER, JJ., reversed, holding that the statements made by the defendant to his wife during the legal existence of the marital relationship were barred on the authority of *People v Hamacher (On Remand)*, 160 Mich App 759 (1987) (Docket No. 100085). The people appeal.

In an opinion by Justice LEVIN, joined by Justices BRICKLEY, CAVANAGH, and ARCHER, the Supreme Court *held:*

In this case, the Court of Appeals correctly held that the spousal communication privilege barred the testimony of the defendant's wife.

1. Section 2162 of the Revised Judicature Act provides two distinct privileges: the spousal privilege and the communication privilege. The spousal privilege, which is applicable only when the witness and the spouse are married at the time of trial, bars one spouse from testifying for or against the other without the other's consent, except in certain enumerated circumstances. The communication privilege bars a spouse from testifying as to any communications made by one to the other

REFERENCES

Am Jur 2d, Witnesses §§ 148-171.

Effect, on competency to testify against spouse or on marital communication privilege, of separation or other marital instability short of absolute divorce. 98 ALR3d 1285.

during the marriage without the consent of the other. The communication privilege applies whether the testimony is sought during or after the marriage, as long as the communication occurred during the marriage. The act provides no exceptions with respect to the communication privilege on the grounds that the spouses are separated or are in the process of obtaining a divorce.

2. Although the statute speaks of "any communication," only confidential communications are protected. In determining whether a communication is confidential, its nature and circumstances may be considered. The nature of the marriage relationship immediately preceding or following the communication, however, is not a circumstance that may be considered. A witness spouse, during the marriage or afterwards, may not be examined regarding any communication made during the marriage.

3. In this case, the nature and circumstances of the communication by the defendant to his wife do not rebut the claim that it was confidential.

Affirmed.

Justice BOYLE, joined by Chief Justice RILEY and Justice GRIFFIN, dissenting, stated that the proper focus in this case is whether the communication at issue was intended to be confidential. The trial court's holding that the communication was not confidential within the meaning of § 2162 did not rest on the time of the communication, but focused on the nature of what was said and the circumstances under which the statement was made. On the basis of its review of the facts and the applicable law, the trial court concluded that the presumption of confidentiality was rebutted. The nature of a particular relationship between a defendant and a witness spouse is a legitimate factor to be considered in determining whether a communication is confidential. In the end, the determination depends on the intention of the communicator, which in turn depends on the relationship with the person to whom and the circumstances under which the communication is made. In this case, it was reasonable for the trial court to conclude on the basis of the circumstances, including the nonexistent marriage relationship, that the statements of the defendant to his permanently separated wife were not confidential and thus admissible.

WITNESSES — HUSBAND AND WIFE — COMMUNICATION PRIVILEGE — SEPARATION — DIVORCE.

The communication privilege under the Revised Judicature Act bars a spouse from testifying as to any communications made

by one spouse to the other during the marriage without the consent of the other spouse regardless of whether the testimony is sought during or after the marriage as long as the communication occurred during the marriage; the act provides no exceptions with respect to the privilege, including no exception on the grounds that the spouses are separated or are in the process of obtaining a divorce (MCL 600.2162; MSA 27A.2162).

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *L. Brooks Patterson*, Prosecuting Attorney, *Robert C. Williams*, Chief, Appellate Division, and *Michael J. Modelski*, Assistant Prosecuting Attorney, for the people.

*John D. Lazar* and *Lawrence G. Kaluzny* for the defendant.

LEVIN, J. We granted leave to appeal in this case, consolidated on appeal with *People v Hamacher*, 432 Mich 157; 438 NW2d 43 (1989), to consider the application of the spousal communication privilege set forth in the Revised Judicature Act, § 2162.[1] We conclude that the Court of Appeals correctly held that the privilege bars the testimony of the defendant's wife in this case and affirm.

I

RJA § 2162[2] provides two distinct privileges. The

[1] MCL 600.2162; MSA 27A.2162.

[2] A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except in suits for divorce and in cases of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both, and where the cause of action grows out of a personal wrong or injury done by one to the other, or grows out of the refusal or neglect to furnish the wife or children with suitable support, and except in cases of desertion or abandonment, and cases arising under section 6 of chapter 83 of the Revised Statutes of 1846, as amended, relating to marriage, and cases where the

first, the spousal privilege, is only applicable when the witness and the spouse are married at the time of trial.[3]

The second privilege, the communication privilege, bars one spouse from testifying "as to any communications made by one to the other during the marriage" without the consent of the other. The communication privilege applies whether the testimony is sought "during the marriage *or afterwards*" as long as the communication occurred during the marriage. RJA § 2162 states no exceptions with respect to the communication privilege.

II

Vermeulen is charged with the murder of his

husband or wife shall be a party to the record in a suit, action, or proceeding, where the title to the separate property of the husband or wife so called or offered as a witness, or where the title to property derived from, through or under the husband or wife so called or offered as a witness, shall be the subject matter in controversy or litigation in such suit, action or proceeding, in opposition to the claim or interest of the other of said married persons, who is a party to the record in such suit, action or proceeding; and in all such cases, such husband or wife who makes such claim of title, or under or from whom such title is derived, shall be as competent to testify in relation to said separate property and the title thereto without the consent of said husband or wife, who is a party to the record in such suit, action or proceeding, as though such marriage relation did not exist; nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage, but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify. [MCL 600.2162; MSA 27A.2162.]

[3] This privilege bars one spouse from testifying for or against the other without the other's consent except in (1) actions for divorce, (2) prosecutions for bigamy or for a crime committed against the children of either or both, (3) actions growing out of a personal wrong or injury done by one to the other or the refusal or neglect to furnish the spouse or children with suitable support, (4) cases of desertion or abandonment, and (5) certain cases relating to marriage and title to property.

"second"[4] wife, Urime Lewis. Approximately one week before her death, Vermeulen spoke to his "first" wife, Sharon Vermeulen, and allegedly said that he would kill Urime Lewis if she left him. The prosecutor seeks to have Sharon Vermeulen testify to the substance of that conversation to refute Vermeulen's claim that Urime Lewis' death was an accident arising out of Vermeulen's attempted suicide.

The prosecutor filed a motion in limine, seeking the admission of Sharon Vermeulen's testimony. The court granted the motion, stating that "[e]ssentially the marital relationship [with Sharon Vermeulen] had long ceased to exist. Thus, statements made by the Defendant to his first wife, Sharon, concerning his intentions on the life of his second wife, Urime, were and are not confidential." The court said:

> Society's interest in protecting the confidentiality of the relationships of permanently separated spouses is outweighed by the need to secure evidence in the search for truth that is the essence of a criminal trial, and proof of the permanent separated status at the time of the communication between the Defendant, John Vermeulen, and his first wife, Sharon Vermeulen, renders the communication privilege automatically inapplicable.

The Court of Appeals reversed, holding that statements "defendant made to his wife during the legal existence of the marital relationship" were barred on the authority of *People v Hamacher (On Remand),* 160 Mich App 759; 408 NW2d 549 (1987).

The prosecutor argues on appeal in this Court

---

[4] Vermeulen filed for divorce from Sharon Vermeulen on October 28, 1985. He married Urime Lewis on November 11, 1985, before he was divorced. Urime Lewis was killed on December 26, 1985. A judgment divorcing Vermeulen and Sharon Vermeulen was entered on February 7, 1986.

that the protection of the communication privilege may not be invoked because no viable marital relationship existed at the time the statement was made. Vermeulen had filed for divorce and bigamously married Urime Lewis.

The prosecutor relies on *United States v Byrd,* 750 F2d 585, 593 (CA 7, 1984), where the United States Court of Appeals for the Seventh Circuit declared that "only communications that take place during a valid marriage between couples still cohabiting pursuant to that marriage are protected by the privilege." That court was, however, expounding and qualifying the federal common-law privilege, not a statutory privilege. In Michigan, privileges are statutory and, in the absence of a "court rule governing marital privileges, the statute controls." *People v Love,* 425 Mich 691, 699; 391 NW2d 738 (1986) (opinion of CAVANAGH, J.).

This Court has not undertaken a review of the statutory privileges—whether marital, physician-patient, lawyer-client, or other—since the promulgation of the Michigan Rules of Evidence. The Court declines the invitation that we do so piecemeal.

The statute clearly and unequivocally provides that a spouse may not, "during the marriage *or afterwards*" (emphasis added) be examined as to any communication made "during the marriage." Unless and until the statute is amended or a court rule superseding the statute is adopted, the trial courts may not inquire into the viability of the marriage.[5] The communication is barred if it was

---

[5] It has been said that

the pragmatic difficulty involved in determining when hostility between the spouses has become implacable, argues for the more easily administered approach of terminating the privilege only upon a decree of divorce. In any event, this latter view is generally adopted. [McCormick, Evidence (3d ed), § 81, p 196.]

made during the marriage. We thus adhere to this Court's recent statement in *People v Hamacher,* 428 Mich 884; 402 NW2d 484 (1987), where this Court observed that the statute "contains no exception to the privilege regarding communications between a husband and wife where the husband and wife are separated or are in the process of obtaining a divorce." Here, as there, Vermeulen and Sharon Vermeulen "remained husband and wife at the time the communication . . . was allegedly made." *Id.*

### III

The prosecutor relies on *People v Zabijak,* 285 Mich 164, 182; 280 NW 149 (1938), where this Court concluded that neither the spousal nor the communication privilege barred the wife's testimony that the defendant entered their home, locked the door and window, showed her a gun, said he was going to kill her and then their baby which she was holding, and as they both began to cry, he pushed her on the bed, "with my baby on the arm, he shoot me twice, two bullets go through baby," he shot her again and started running to her mother's home and said, "I am finish with you; I am going outside and going to kill your mother now." Zabijak proceeded immediately to shoot his mother-in-law, then shot himself but recovered, and was being tried for the murder of his mother-in-law.

This Court declared that Zabijak had failed to establish that he and the witness were still married at the time of trial, and thus the spousal privilege, which might have barred her from testi-

See also *Coleman v State,* 281 Md 538; 380 A2d 49, 53 (1977), *Muetze v State,* 73 Wis 2d 117; 243 NW2d 393 (1976), and *People v Fields,* 31 NY2d 713; 289 NE2d 557; 337 NYS2d 517 (1972), aff'g 38 AD2d 231; 328 NYS2d 542 (1972).

fying, was inapplicable. Turning to the communication privilege, the Court declared that the statement that he was "going to kill" his mother-in-law "now" was not confidential. The statement was not, said the Court, "in the nature of an admission or confession or an act of which she otherwise might not be cognizant. Nothing was revealed in consequence of the privacy of the marriage relation. The statements testified to were in the nature of threats." The Court added that the testimony "did not injure the marriage relation of the parties by the betrayal of any confidence reposed in her by defendant."

Although the statute speaks of "any communication," it is well-established in this state[6] and generally[7] that only confidential communications are protected by the communication privilege. It has been said that "a variety of factors, including the nature of the message or the circumstances under which it was delivered, may serve to rebut a claim that confidentiality was intended."[8]

We agree that the nature and circumstances of the communication may be considered in determining whether the communication was confidential. The nature of the marriage relationship immediately preceding or immediately after the communication is not, however, a circumstance respecting the communication that may be considered in determining whether it is confidential. To hold otherwise would be contrary to the statutory mandate providing that the witness spouse shall not "during the marriage or afterwards" be examined regarding any communication made during the marriage.

---

[6] *People v Zabijak,* 285 Mich 164, 177; 280 NW 149 (1938), *Pierson v Illinois C R Co,* 159 Mich 110, 113; 123 NW 576 (1909), and *People v Stubli,* 163 Mich App 376, 380; 413 NW2d 804 (1987).

[7] McCormick, Evidence (3d ed), § 80, p 193.

[8] *Id.*

The statement allegedly made by Vermeulen to Sharon Vermeulen that he would kill Urime Lewis if she left him, in contrast with the statement in *Zabijak,* was not made in the course of a murderous assault on the witness spouse. The statement in "the nature of threats" in *Zabijak* concerned a contemplated assault that was an aspect of the same felonious transaction in which, and was uttered immediately after, the witness spouse had been shot and their baby killed. It was at that point that Zabijak said that he was going to kill the witness spouse's mother "now," which he proceeded immediately to do and then shot himself.[9] Under the circumstances, it is not remarkable that this Court concluded that Zabijak's statement concerning the contemplated assault on his mother-in-law was not confidential. While the Court added that the witness' testimony did not injure the marriage relation, that was not the basis of decision, which appears rather to have been based on the nature of the communication and the circumstances in which it was delivered.

The nature and circumstances of the communication in the instant case do not rebut a claim that the communication was confidential.

IV

We conclude that the Court of Appeals correctly held that the spouse's testimony was inadmissible. We decline the invitation to judicially amend the communication privilege stated in § 2162 of the RJA.

The decision of the Court of Appeals is affirmed.

[9] To the extent *Zabijak* can be read as stating a rule that a communication to a spouse of an intention to inflict injury on a third person is not a confidential communication per se because it is in the nature of a threat, it is overruled.

The cause is remanded to the trial court for proceedings consistent with this opinion.

BRICKLEY, CAVANAGH, and ARCHER, JJ., concurred with LEVIN, J.

BOYLE, J. (*dissenting*). I would conclude that the Court of Appeals erred when it peremptorily reversed the trial court's ruling in limine on the authority of *People v Hamacher (On Remand)*, 160 Mich App 759; 408 NW2d 549 (1987). The decision of the Court of Appeals in *Hamacher* did not address the preliminary issue of confidentiality, but rather was concerned only with the proper construction of the exceptions in § 2162. The trial court in this case ruled that the statute was inapplicable, because the statements at issue were not confidential. The trial court did not err. I would reverse the decision of the Court of Appeals and remand this case to the Oakland Circuit Court for trial.

The issue in this case is whether the trial court erred in concluding that the presumption of confidentiality had been rebutted on the facts before it. Therefore, unless it is held as a preliminary matter that any communication, whether confidential or not, is excluded by the statute, the proper focus of our review is whether the communication was intended to be confidential. The majority concludes: "The statute clearly and unequivocally provides that a spouse may not, 'during the marriage *or afterwards*' (emphasis added) be examined as to any communication made 'during the marriage.'" *Ante,* p 37. The majority's paraphrase of the issue suggests that the issue is whether the privilege to bar a marital communication survives dissolution of the marriage. However, the trial court's holding did not rest on the time of the

communication, but rather focused on the nature of what was said and the circumstances in which the statement was made. Indeed, in his ruling the trial judge specifically recognized:

> The "spousal privilege" germane to this case applies to confidential communications made within the marital relationship, irrespective of the marital status of the parties at the time of the suit.

Thus, the question presented is whether the trial court incorrectly concluded that the defendant's statement that he intended to kill his second wife was not a confidential communication.

The defendant Vermeulen was charged with the murder of Urime Lewis. The defendant had married Ms. Lewis on November 11, 1985, while still married to Sharon Vermeulen. Prior to his bigamous marriage to Ms. Lewis, the defendant had attempted to secure Sharon Vermeulen's signature on a document which falsely stated that the two had been divorced for five years. When she refused to sign that statement, the defendant filed for divorce.[1] On or about December 19, 1985, approximately five weeks after marrying the victim, the defendant allegedly told Sharon Vermeulen that he intended to kill Ms. Lewis if she left him. Ms. Lewis was shot and killed on or about December 26, 1985, at which time defendant apparently also attempted to shoot himself. Approximately six weeks later, on February 7, 1986, defendant's divorce from Sharon Vermeulen was granted.

Prior to trial, the prosecutor moved in limine to secure the admission of Sharon Vermeulen's testi-

---

[1] The complaint, dated October 28, 1985, and filed in the Oakland Circuit Court on November 1, 1985, stated that defendant and Sharon Vermeulen were "no longer living together as husband and wife and have not so lived together since September 30, 1985."

mony concerning defendant's threats upon the life of Ms. Lewis. The trial court held that the communication was not confidential. In concluding that Sharon Vermeulen's testimony was admissible, the trial judge stated:

> The facts[2] show an intention for a permanent separation. The above facts in existence at the time of the communication rebut the presumption of confidentiality that is a requirement of the exercise of the privilege. The purpose for the privilege is not affected or weakened as a result of this decision.
>
> The marriage relationship of John and Sharon Vermeulen had no viability. Essentially the marital relationship had long ceased to exist. Thus, statements made by the Defendant to his first wife, Sharon, concerning his intentions on the life of his second wife, Urime, were and are not confidential.
>
> In addition, the communication had to do with the commission of a crime not with the privacy of the Vermeulen marriage.
>
> Society's interest in protecting the confidentiality of the relationships of permanently separated spouses is outweighed by the need to secure evidence in the search for truth that is the essence of a criminal trial, and proof of the permanent separated status at the time of the communication between the Defendant, John Vermeulen, and his first wife, Sharon Vermeulen, renders the communications privilege automatically inapplicable.

Despite the use of the word "automatically," it

---

[2] The facts referred to include 1) defendant and Sharon Vermeulen were separated at the time of the alleged communication, 2) defendant had asked Sharon Vermeulen to sign a document falsifying their divorce, 3) defendant filed for divorce on October 28, 1985, declaring that the two were no longer living as husband and wife, and 4) defendant bigamously married while still married to Sharon Vermeulen. In addition, the judge noted that the communication concerned the commission of a crime and did not deal with any aspect of the Vermeulen marriage.

is evident from the trial judge's careful review of the facts and the law that the ruling was based on the fact that the alleged communication was not a *confidential* communication within the meaning of § 2162, and as such, the privilege was inapplicable. Judge Mester did not base his ruling on an erroneous view that the privileged communication rule does not survive a marriage. Rather, the trial court held that, in light of the fact that the communication occurred *after* the parties were separated, *after* the defendant had filed for divorce alleging that the parties were no longer living together and that the objects of matrimony had been destroyed, and *after* he had bigamously married, the presumption of confidentiality was rebutted.

Contrary to the apparent position of the majority, this Court has recognized that not every communication made during marriage is subject to the privilege. In *People v Zabijak,* 285 Mich 164, 177; 280 NW 149 (1938), this Court reiterated the accepted rule that "communication" as used in the statute refers only to those communications "recognized by law to be *confidential* communications."[3] (Emphasis added.) In concluding that the statements at issue in *Zabijak* were not confidential within the meaning of the statute, the Court

---

[3] In *Zabijak,* the defendant was married but did not reside with his wife. One afternoon he confronted his wife with a gun at her home and informed her that he was going to kill her. After locking the door, he chased his wife to another room where she held their infant child. The defendant then shot three times, killing the child and wounding his wife. He then told her he was going to kill her mother, and proceeded to walk about one block away to the home of his mother-in-law, where he shot and killed her. The defendant then attempted to kill himself by shooting the gun into his mouth. The defendant was charged with the first-degree murder of his mother-in-law, but was not tried for nearly sixteen years because he was incarcerated in a state hospital for the criminally insane. Upon his release from the state hospital, and at his trial, the defendant attempted to bar his former wife's testimony concerning his statements to her at the time of the assault.

looked to several factors. Included in the Court's considerations were the facts that 1) defendant and his wife were married at the time of the statements but were living separately and in the process of obtaining a divorce, 2) subsequent to the crime, but prior to trial, a decree of divorce was obtained, 3) the communications were not in the nature of an admission of which the defendant's spouse was not otherwise aware, 4) the communications were in the nature of threats relating to a criminal act, and 5) revelation of the communications did not injure the marriage relation.

In this case, similar factors were noted by the trial judge in finding that the presumption of confidentiality was rebutted. First, the defendant was separated from his wife at the time of the communication and had attempted to falsify a document indicating a legal divorce from her. Also, the defendant had filed for divorce and bigamously married the victim at the time of the communication. Second, subsequent to the communication, but prior to the trial, defendant obtained a divorce decree. Third, the communication was in the nature of threats wholly unrelated to the Vermeulen marriage. Fourth, the policy underlying the privilege was not affected by admission of the testimony in this case. Finally, the trial judge specifically found that society's interest in protecting the confidentiality of relationships of permanently separated spouses is outweighed by the need to secure this evidence.

The majority attempts to distinguish *Zabijak* on the grounds that the defendant's statement in this case "was not made in the course of a murderous assault on the witness spouse." *Ante*, p 40. The statements in *Zabijak*, the majority points out, concerned a contemplated assault that was part of the same felonious activity in which the witness

spouse was involved. Under such circumstances, it argues, the Court's determination that the communication was not privileged is "not remarkable."

A careful reading of the Court's analysis in *Zabijak,* however, shows that neither the closeness in time of the attack on the witness spouse and the communication, nor the fact that the statements by the defendant were part of the "same felonious transaction" as involved the witness, was considered to be a primary factor in its conclusion that the communication in that case was not confidential. Indeed, there is no mention of those facts anywhere in the Court's analysis of the confidentiality issue. That discussion focuses rather on the nature of the statements themselves, which the Court characterizes as "threats," the circumstances under which the statements were made, and the possible injury to the "marriage relation" between the defendant and the witness.

The majority also attacks the reliance of the Court in *Zabijak* on the fact that the "marriage relation" between the defendant and the witness was less than harmonious. The majority contends that "[t]he nature of the marriage relationship immediately preceding or immediately after the communication is not . . . a circumstance respecting the communication that may be considered in determining whether it is confidential." *Ante,* p 39.

The question of societal protection of the marital relationship in general aside, it seems to me that the nature of the particular relationship between a defendant and a witness spouse is, as the *Zabijak* Court recognized,[4] a legitimate factor in determin-

---

[4] The *Zabijak* holding may be read as the Court's attempt to avoid the harsh consequences that flow from an application of the statute that does not recognize that not all statements made during a marriage can be considered confidential. It is also arguably subject to

ing whether a communication is confidential, because in the end such a determination depends on the intention of the communicator, which in turn depends on his relationship with the one with whom he is communicating and the circumstances in which the communication was made. Would the defendant here have communicated something he truly intended to be confidential to a woman from whom he was permanently separated and against whom he had filed for divorce? I think it was reasonable for the trial court to conclude on the basis of these circumstances, including the nonexistent marriage relationship, that the statements the defendant made to his permanently separated wife were not confidential and therefore were admissible.

The Court of Appeals, however, clearly erred when it ruled that the proffered testimony of Sharon Vermeulen was barred on the authority of *People v Hamacher (On Remand), supra.* The Court of Appeals in that case did not have occasion to test the confidentiality of the statements made by the defendant. The arguments offered by the defendant, and the discussion by the majority, concluding that the trial judge has crafted an exception to § 2162 for communications on the basis of the strength of an otherwise legal marriage are unfounded. The trial judge did not amend the statute. He held that the statute was inapplicable in this case.

---

the criticism that permitting a court to evaluate the nature of the relationship at the time of the communication involves potential unwarranted intrusions into the marital relationship. These observations suggest that the Legislature might appropriately consider limiting the privilege to situations in which the lack of any real continuing relationship has been manifested by objective events such as filing for divorce or separate maintenance. The Legislature has, for example, manifested its intent that a sexual assault prosecution is not precluded by continuation of the legal relationship where "the couple are living apart and one of them has filed for separate maintenance or divorce." MCL 750.520*l*; MSA 28.788(12).

While it is as important in today's society as it has been throughout the history of our jurisprudence to promote a secure haven for marital confidences, applying the rule in these circumstances to bar the first Mrs. Vermeulen's testimony regarding the homicide of the second Mrs. Vermeulen employs an anachronistic obstacle to truth whose justification can only be traced to the ancient notion that husband and wife are one.

I would reverse the decision of the Court of Appeals on the basis that the Court of Appeals incorrectly concluded that the spouse's testimony was inadmissible as a confidential communication and remand this case to the Oakland Circuit Court for trial.

RILEY, C.J., and GRIFFIN, J., concurred with BOYLE, J.