PEOPLE v BIGGS

Docket No. 148058. Submitted August 11, 1993, at Lansing. Decided November 15, 1993, at 9:40 A.M.

Corinna K. Biggs was convicted by a jury in the Jackson Circuit Court, Gordon W. Britten, J., of second-degree murder after she confessed to smothering her two-year-old child with a pillow. She was sentenced to life in prison. She appealed.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in admitting evidence of other bad acts by the defendant where she previously had burned her child and had given him an overdose of a drug.

2. There was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant acted with malice.

3. The defendant was not denied effective assistance of counsel when defense counsel did not pursue a nonmeritorious defense.

4. Sufficient evidence was admitted to establish the corpus delicti of the crime. The trial court did not abuse its discretion in admitting the defendant's confession to prove the remaining elements of the crime.

5. Alleged misconduct by the prosecutor did not deprive the defendant of a fair trial. In light of the defendant's failure to object and the overwhelming evidence against the defendant, manifest injustice did not occur.

6. Questioning of the defendant's husband did not involve a breach of the marital communications privilege. Because a police officer was present when the defendant told her husband that she "did it," the communication was not confidential and the marital communications privilege does not apply.

7. The case must be remanded for resentencing because the trial court imposed the life sentence under the erroneous belief that a life sentence would make the defendant eligible for parole sooner than would a long term of years.

Conviction affirmed. Case remanded for resentencing.

HOOD, P.J., dissenting in part, stated that misconduct by the prosecutor denied the defendant a fair trial and that the prosecutor's conduct was intolerably offensive to the mainte-

nance of a sound judicial system. Therefore, despite the fact that the conviction is supported by the evidence, reversal is appropriate. There is a reasonable possibility that without the prosecutor's improper comments the jury might have resolved disputes regarding intent in favor of the defendant and convicted her of manslaughter instead of second-degree murder.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Joseph S. Filip,* Prosecuting Attorney, and *Margo C. Runkle,* Chief Appellate Attorney, for the people.

*Don Ferris,* for the defendant on appeal.

Before: HOOD, P.J., and CAVANAGH and R. J. TAYLOR,* JJ.

CAVANAGH, J. Defendant appeals as of right a conviction by a jury of second-degree murder, MCL 750.317; MSA 28.549. Charges of first-degree murder, MCL 750.316; MSA 28.548, were dismissed following defendant's motion for a directed verdict. Defendant was sentenced to life in prison. We affirm, but remand for resentencing.

Defendant confessed to smothering her two-year-old child with a pillow. She said she did not mean to kill him and that she was just trying to get her husband's attention. She had smothered and revived the child with cardiopulmonary resuscitation (CPR) on several previous occasions, pretending that he was having seizures. She had also once given the child an excessive dose of her mother-in-law's heart medicine and, on a different occasion, had badly burned his hand, all allegedly because her husband spent all his time with his mother instead of with the defendant.

Defendant is a nineteen-year-old eighth-grade dropout who has an IQ of eighty-three and, accord-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing to psychologists, is immature, self-indulgent, passive, and extremely dependent on males. She stated that she first tried to get her husband's attention by injuring herself, but he did not respond. She then turned to injuring her child.

Defendant first argues that evidence that she previously had burned the child and had given him an overdose of a drug was improperly admitted. We disagree.

Under MRE 404(b), evidence of other bad acts is not admissible to prove that the defendant is a bad person who acted accordingly. However, evidence of other bad acts is admissible to show "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." To be admissible, however, there must be substantial evidence that the defendant committed the other bad act, and there must be a special quality of the bad act tending to prove motive, opportunity, and intent in committing the crime charged. Furthermore, the defendant's motive, opportunity, and intent must be material to determining the defendant's guilt, and the probative value of the evidence of other bad acts must not be substantially outweighed by the danger of unfair prejudice. *People v Golochowicz,* 413 Mich 298, 308-309; 319 NW2d 518 (1982). Defendant argues that the other bad acts are not probative of her intent and also that, even if they are, their probative value is substantially outweighed by the danger of unfair prejudice. We disagree.

Other instances when defendant deliberately injured her child are probative of malice. That is, of defendant's intent to kill or cause great bodily harm, or of her wilful and wanton disregard for the natural consequences of her actions. They are also probative of the absence of mistake or acci-

dent. Malice is an element of second-degree mur-
der and is therefore material; lack of accident or
mistake is also material because accident was
defendant's only defense. Further, given defen-
dant's confession and the unchallenged evidence of
other instances of smothering, the danger of unfair
prejudice flowing from the evidence of other bad
acts does not substantially outweigh its probative
value. The trial court did not abuse its discretion
in admitting evidence that defendant previously
had burned her child and had given him an over-
dose of a drug. See *People v Vandervliet,* 444 Mich
52; 508 NW2d 114 (1993).

Next, defendant argues that there was insuffi-
cient evidence to send the case to the jury on a
second-degree murder charge because there was no
evidence of defendant's intent. Viewing the evi-
dence in the light most favorable to the prosecu-
tion, we disagree.

To convict defendant of second-degree murder,
the prosecutor had to prove that she intended to
kill, or do great bodily harm, or that she acted
with wilful and wanton disregard of the likelihood
that the natural tendency of her actions would be
to cause death or great bodily harm. *People v
Spearman,* 195 Mich App 434, 438; 491 NW2d 606
(1992), overruled in part *People v Veling,* 443 Mich
23; 504 NW2d 456 (1993). Here, the evidence
showed that defendant had repeatedly injured her
child. It also showed that defendant had had CPR
training, from which the jury could infer—as she
claimed—that she did not want her child to die.

However, the defendant's CPR training also al-
lowed the jury to infer that she realized her son
could die if she did not revive him. Further, the
evidence showed that, on the day he died, she had
smothered him twice. She delayed calling for help
when, on the second occasion, she was unable to
revive him. Viewed in the light most favorable to

the prosecutor, this evidence shows that defendant intentionally set in motion forces that she knew were likely to cause death or great bodily harm. The evidence was therefore sufficient for the jury to infer that defendant acted with wilful and wanton disregard that death or great bodily harm would be the natural consequence of her actions. *People v Flowers,* 191 Mich App 169, 176-177; 477 NW2d 473 (1991). Therefore, there was sufficient evidence to find beyond a reasonable doubt that defendant acted with malice.

Defendant next argues that she was denied effective assistance of counsel when her attorney did not attempt to present a diminished capacity defense. We disagree because diminished capacity is not a defense to general intent crimes such as second-degree murder. *People v England,* 164 Mich App 370, 374-375; 416 NW2d 425 (1987).[1] Defense counsel did not err in failing to pursue a nonmeritorious defense.

Next, defendant claims that her confession was admitted erroneously because the prosecutor did not independently establish the corpus delicti of the crime. We disagree.

The only elements of a murder charge that must be established independently of a defendant's confession are the fact of death and the fact that the death was caused by some criminal agency. *Spearman, supra* at 441. Here, a pathologist testified that the child did not die of natural causes and specifically ruled out injury, disease, accident, suicide, and sudden infant death syndrome. He testified that suffocation was the most likely cause of death.

---

[1] Contrary to defendant's argument, there is no conflict in the case law regarding this point. The case cited by defendant dealt with the diminished capacity defense in the context of a first-degree murder charge. See *People v Fields,* 64 Mich App 166, 168, 172-173; 235 NW2d 95 (1975). Unlike second-degree murder, first-degree murder is a specific intent crime. *People v Thomas,* 126 Mich App 611, 623; 337 NW2d 598 (1983).

Additionally, the emergency room doctor testified that the child's body was abnormally cool and that it was likely that he had been dead for a while before the call for help was placed. He also testified that death does not usually result from childhood seizures. Further, the child had a history of suspicious unexplained seizures and injuries. In our opinion, this evidence sufficiently established the corpus delicti. The trial court did not abuse its discretion in admitting defendant's confession to prove the remaining elements of the crime.

Defendant next argues that the prosecutor's misconduct deprived her of a fair trial. We disagree.

The test of whether the prosecutor engaged in misconduct is whether defendant was denied a fair and impartial trial. *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989). Defendant's failure timely and specifically to object to the prosecutor's argument necessarily results in our review of that matter for a miscarriage of justice. Absent manifest injustice, this Court will affirm. *People v Wise,* 134 Mich App 82, 105; 351 NW2d 255 (1984). Furthermore, a miscarriage of justice will not be found if the prejudicial effect of the prosecutor's remarks could have been cured by a timely instruction. *People v Gonzalez,* 178 Mich App 526, 534-535; 444 NW2d 228 (1989).

In response to the prosecutor's closing argument, the trial court properly instructed the jury that sympathy and prejudice could not be allowed to influence its decision. Furthermore, in light of defendant's failure to object, we refuse to find manifest injustice because the evidence against the defendant was overwhelming and considerable. *Wise, supra* at 101-105, 106; see *People v Swartz,* 171 Mich App 364, 369-373, 374; 429 NW2d 905 (1988).

Next, defendant argues that questioning of her husband regarding privileged marital communications was improper. We disagree. The statute regarding privileged marital communications provides that neither spouse shall, "during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage." MCL 600.2162; MSA 27A.2162 (last clause).[2] The prosecution correctly notes that "[a]lthough the statute speaks of 'any communication,' it is well-established . . . that only confidential communications are protected by the communication privilege." *People v Vermeulen*, 432 Mich 32, 39; 438 NW2d 36 (1989). Here, the record shows that a police officer was present when defendant told her husband that she "did it." Therefore, because the communication was not confidential, the privilege does not apply.

Lastly, defendant argues that her sentence was disproportionate. We note that, on appeal, the prosecution agrees that the trial court erred in imposing a life sentence under the erroneous belief that a life sentence would make defendant eligible for parole sooner than a long term of years. We agree, and remand for resentencing.

The conviction is affirmed. Remanded for resentencing.

R. J. TAYLOR, J., concurred.

HOOD, P.J. *(dissenting in part)*. I must respectfully dissent from that portion of the majority opinion that concludes that the prosecutor's misconduct in this case did not deny defendant a fair

---

[2] Because the parties were divorced at the time of trial, this case does not involve the spousal testimonial privilege. See MCL 600.2162; MSA 27A.2162 (first clause); see also *People v Fisher*, 442 Mich 560; 503 NW2d 50 (1993).

trial. I believe that the prosecutor's misconduct in this case was intolerable, and would reverse.

Portions of the prosecutor's closing argument demonstrate my point, e.g.:

> Now as Judge Britten has instructed you, he has removed from your consideration first-degree murder, based upon his assessment of a lack of evidence of premeditation and deliberation.
>
> Like it or not, that at least makes your job easier, because now you have a choice of three verdicts: guilty of murder in the second degree, or guilty of manslaughter, or not guilty.

The prosecutor went on to discuss the elements of second-degree murder. While discussing intent, he stated:

> [T]he Defendant took a pillow, took the face of her two-year-old son and purposely brought those two together, held them together until such a time as the baby died, and it wasn't the first time that she did it. It was really the second time on March the 5th, but she had been doing this other times, too, several times before that.
>
> On March the 5th of 1991, the baby was limp from the first incident. She called to her father, who came into the living room, and the baby was revived. So the father then went back to bed, and she did it again over [after?] a period of time, as best we can tell for about 45 minutes.
>
> This is not just evidence of intent but also shows, in my judgment, premeditation and deliberation. But that's been removed for (sic) your consideration whether you like it or not.

Still later, while discussing defendant's conduct on the date of the crime, he said:

> She simply did not want this child to live. When the baby got to the hospital, the temperature was

90.7. In the opinion of Dr. Maino, the baby was already dead when the call for help had been placed and possibly long before that.

This child never had a chance.

On March the 5th of 1991, he was finally released from what had to have been a living hell. For the last four or five months before his death had been filled with pain and terror on the part of that child.

Defendant's objection to this remark was sustained. The prosecutor then immediately restated his point by saying:

During the four or five months preceding the child's death, he had been smothered several times, he had been burned on his hand, and he had been overdosed with medication.

On rebuttal, the prosecutor stated:

Mr. Jacobs started his argument by saying this is a serious matter for his client. It certainly is a serious matter for her. It's also a serious matter for the two-year-old boy, who is now two years forever.

The judge will instruct you that sympathy does not enter into your deliberations. We'd ask that you follow those instructions. If you find yourself feeling sympathy toward the Defendant, well, I'd ask you to balance that out with sympathy toward the two-year-old boy, and do not let sympathy enter into your deliberations.

Mr. Jacobs says the Prosecuting Attorney is still trying to overcharge the case. The facts have not been changed, even though you're not entitled to consider first-degree anymore.

It still shows an intent to kill; the facts show that she intended to kill; that (sic) facts show that she used premeditation and deliberation as well. However, you're not permitted to continue (sic) that.

Then, in further discussing intent and motive, he stated:

> Mr. Jacobs says that she didn't intend to kill the child. If she had killed the child—or if she had intended to kill the child, then she would not have had a means of getting attention from her husband. Well, of course, the death of a child is a means of getting attention from her husband, and she's still got the nine-month-old baby to back up. She can still use that child and start smothering him, to get attention from her husband.

A little later, while arguing that defendant's actions on the day of the crime showed malice, and distinguishing intent from motive, the prosecutor said:

> As far as manslaughter versus second-degree murder and first-degree murder is concerned, if I'm driving down the road and I am reading a book, and I'm trying to read and drive at the same time and I kill a pedestrian. Is that gross negligence? Sure. Am I guilty of manslaughter? Of course I am. I shouldn't be doing that; creating a risk of wanton disregard for the public, for the pedestrian, if I try to read a book and drive down the highway at the same time.
>
> If I drive my car through a safety zone where people are standing, knowing that death or great bodily harm can result from that, then I'm guilty of second-degree murder.
>
> If there is someone that I'm waiting for to cross the street and when that person starts crossing the street I intentionally drive my car into that person and kill him, that's first-degree murder, because intent to kill plus premeditation and deliberation.
>
> I submit to you that this case is a great deal more severe than manslaughter. This is certainly a second-degree murder, without any doubt.

The prosecutor then urged the jury to consider the facts and convict defendant of second-degree murder.

It is well settled that "[t]he role of a prosecutor is to seek justice, not merely to convict." *People v O'Quinn,* 185 Mich App 40, 43; 460 NW2d 264 (1990). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Id.* However, a conviction will not be reversed on the basis of remarks to which the defendant did not object unless their prejudicial effect is so great that it could not have been cured by a timely instruction. *People v Duncan,* 402 Mich 1, 15-17; 260 NW2d 58 (1977).

Here, the prosecutor's remarks were highly improper. The repeated references to first-degree murder were tantamount to sending that higher charge to the jury even though the trial court had ruled that there was no evidence to support it. See *People v Vail,* 393 Mich 460, 463-464; 227 NW2d 535 (1975) ("where a jury is permitted consideration of a charge unwarranted by the proofs there is *always* prejudice because a defendant's chances of acquittal on any valid charge [are] substantially decreased by the possibility of a compromise verdict") (emphasis added). The prosecutor further erred by expressing his personal opinion, saying that "in my judgment" the evidence showed not only malice, but also premeditation and deliberation. *People v Ignofo,* 315 Mich 626, 632-634, 636; 24 NW2d 514 (1946). In effect, the prosecutor told the jury that the court had erred in removing the first-degree murder charge from their consideration and urged them to convict defendant of second-degree murder because it was the highest charge left.

The prosecutor also erred in urging the jury to sympathize with the victim and in deliberately

playing on the jury's emotions in violation of the court's ruling. *People v Swartz,* 171 Mich App 364, 372; 429 NW2d 905 (1988). He further appealed to the jury's sense of civic duty by implying that, if defendant did not get convicted, she would start smothering her youngest child in order to get attention from her husband. *Id.* at 373.

I cannot condone the prosecutor's deliberate insertion of error and prejudice into the proceedings. *People v Robinson,* 386 Mich 551, 563-564; 194 NW2d 709 (1972). I am convinced, in the face of numerous and deliberate errors by this prosecutor, that

> [u]nless we enforce the rules we encourage their violation and add to the burden of the appellate courts. Our frequent strictures against this kind of argument mean little unless we are prepared to reverse and require a new trial. A prosecutor who crosses a clearly defined line, and a trial judge who makes no effort to stop him, have only themselves, not the appellate courts, to blame if a judgment of conviction is reversed and the case must be retried because of improper argument. [*People v Farrar,* 36 Mich App 294, 299-300; 193 NW2d 363 (1971).]

I would find the prosecutor's conduct intolerably offensive to the maintenance of a sound judicial system and, therefore, would reverse despite the fact that defendant's conviction is supported by the evidence. I further believe that, but for the prosecutor's improper comments, there was a reasonable possibility that the jury might have resolved disputes regarding intent in favor of the defendant and that she might have been convicted of manslaughter instead of second-degree murder.

Except for this issue, I concur in the majority opinion.