## PEOPLE v CARSON

Docket No. 159501. Released June 4, 1996 at 9:20 A.M.; vacated June 14, 1996.

Before: JANSEN, P.J., and TAYLOR and J. P. NOECKER,* JJ.

TAYLOR, J. Defendant appeals as of right his jury trial convictions of assault with intent to rob while armed, MCL 750.89; MSA 28.284, and assault with intent to commit great bodily harm less than murder, MCL 750.84; MSA 28.279. Defendant subsequently pleaded guilty of being an habitual offender, second offense, MCL 769.10; MSA 28.1082. Defendant was sentenced to parolable life in prison for the conviction of assault with intent to rob, and ten to fifteen years for the conviction of assault with intent to commit great bodily harm. We affirm defendant's convictions and sentence for the conviction of assault with intent to commit great bodily harm less than murder and remand for resentencing for the conviction of assault with intent to rob while armed.

At about 12:30 A.M. on February 24, 1992, defendant approached the victim in a parking lot. After asking for directions, defendant put a knife to the victim's throat and demanded money. Defendant backed the victim up against a truck and began trying to undo her pants. The victim pushed defendant back. Defendant lost his footing and punched the victim in the face. The victim fell down and was crouching when defendant stabbed her in the back and ran away. The victim recovered after spending four days in the hospital. Defendant raises several claims of error. We will first discuss the claim that requires resentencing and then dispose of the remaining issues.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant argues that his parolable life sentence for the conviction of assault with intent to rob while armed is disproportionate.[1] He notes that the recommended sentence under the sentencing guidelines for this offense is eight to twenty years, and states that his parolable life sentence is far beyond the recommended minimum guidelines' range. Defendant argues that although he will become subject to the jurisdiction of the parole board after ten years,[2] the reality is that most prisoners sentenced to parolable life are never released from prison.

This Court has issued conflicting opinions in reviewing parolable life sentences. In *People v Lindsey*, 139 Mich App 412; 362 NW2d 304 (1984), and *People v McNeal*, 156 Mich App 379; 401 NW2d 650 (1986), panels of this Court held that sentences of thirty to sixty and thirty-five to seventy years were lesser sentences than parolable life sentences even though a parolable life sentence would permit earlier consideration for parole. In *People v Hurst (After Remand)*, 169 Mich App 160; 425 NW2d 752 (1988), another panel of this Court concluded that a forty- to eighty-year sentence was more severe than a parolable life sentence because a defendant serving a parolable life sentence was eligible for parole after ten years. In *People v Houghteling*, 183 Mich App 805, 811; 455 NW2d 440 (1990), a panel of this Court reviewed a parolable life sentence where the sentencing guidelines' range had been twelve to fifteen years. The Court stated that a parolable life sentence did not shock the Court's conscience, noting that the defendant would be eligible for parole after ten years. The Court then stated that the parolable life sentence "may actually be quite lenient." *Id.* at 811. In *People v Gilbert*, 183 Mich App 741, 750-751; 455 NW2d 731 (1990), this Court reviewed a parolable life sentence where the sentencing guidelines' range was ten to twenty years. The Court noted that the defendant would be eligible for parole after serving ten years and concluded that, compared to the guidelines' range, a parolable life sentence was not disproportionate or excessive.

However, the analysis used by the *Houghteling* and *Gilbert* Courts was rejected in *People v Shell*, 200 Mich App 160, 161; 503 NW2d 711 (1993), where the Court stated that a parolable life sentence is not to be considered within the guidelines merely because the time at which the defendant becomes eligible for parole coincides with a point within the guidelines. Also, in *People v Biggs*, 202 Mich App 450, 456; 509 NW2d 803 (1993), a panel of this Court accepted a prosecutor's concession that the trial court had erred in imposing a parolable life sentence under the mistaken impression that such a life sentence would make the defendant eligible for parole sooner than a long term of years. This statement in *Biggs* is directly contradicted by *People v Legree*, 177 Mich App 134, 141-142; 441

---

[1] Defendant does not challenge his ten- to fifteen-year sentence for the conviction of assault with intent to commit great bodily harm and, thus, we affirm this sentence.

[2] For crimes committed after October 1, 1992, parole eligibility is moved to fifteen years. *People v Merriweather*, 447 Mich 799, 809, n 9; 527 NW2d 460 (1994).

NW2d 433 (1989), which stated that a defendant receiving a parolable life sentence is eligible for parole "well before" a defendant who is sentenced to a long-term indeterminate sentence. However, the *Biggs* Court may have been considering the fact that a defendant with a parolable life sentence may not be paroled if his sentencing judge or a successor judge opposes parole and the fact that there is a great difference between a defendant's coming under the jurisdiction of the parole board and receiving parole. MCL 791.234(6)(b); MSA 28.2304(6)(b); *Hurst, supra.*

Additional contradictory opinions were issued in 1994-95. In *People v Phillips (On Rehearing),* 203 Mich App 287, 291; 512 NW2d 62 (1994), a panel of this Court found that a minimum sentence of sixty-five years was an abuse of discretion, but added that if the sentence had been parolable life, it would have affirmed. This approach appeared to be vindicated when the Supreme Court decided *People v Merriweather,* 447 Mich 799, 809; 527 NW2d 460 (1994), and said that the defendant might have been better off with a parolable life sentence than the 60- to 120-year sentence that had been imposed. *Id.* This was apparently not understood by our Court to be dispositive, however, and in *People v Lino (After Remand),* 213 Mich App 89; 539 NW2d 545 (1995), this Court held that a long-term indeterminate sentence, such as a forty- to sixty-year prison term, is less severe punishment than a parolable life term because, under parole board practices from the late 1980s through the early 1990s, very few defendants sentenced to parolable life were paroled. In *People v Love (After Remand),* 214 Mich App 296, 302; 542 NW2d 374 (1995), the Court, without expanding on the *Lino* rationale, or distinguishing the cited comment from *Merriweather* for that matter, held that a sixty- to ninety-year prison sentence is also less severe punishment than a parolable life sentence. Under Administrative Order No. 1994-4, these holdings of *Lino* and *Love* bind this panel.[3]

As a result, we are required to conclude, as this defendant urges, that in his current situation, where he will be eligible for parole in ten years, he is invariably less advantaged than he would be if, upon success in this Court, he were resentenced, as he well might be given the circumstances of his crime, to a long-term indeterminate sentence. It seems somewhat puzzling to us that he would perceive his self-interest to be advanced by this outcome because parolable life gives him his first opportunity for parole in ten years, but, after resentencing, it may be many decades before his first appearance before a parole board. Perhaps he is confident that any new sentence will not be lengthy, or maybe he just believes, even if the sentence is lengthy, he is somehow better off. In any case, we can conclude he has decided to move in this direction for reasons of his own, which we may question but not challenge. Nevertheless, that concession

---

[3] We are puzzled by Judge JANSEN's questioning whether *Lino* is applicable. *Lino* squarely stands for the proposition that a parolable life sentence is more severe than a lengthy term of years such as forty to sixty years. The *Love* panel so understood *Lino* this way, expanding *Lino's* conclusion to a sixty- to ninety-year sentence.

having been made, we cannot help but ask ourselves whether similarly sit-
uated inmates, bound by the law of *Lino* and *Love,* would also see a
potential long-term indeterminate sentence as an advantage over parol-
able life. Such inmates might, if they planned to be model prisoners and
took a long view of the probabilities of parole, feel distinctly disadvan-
taged by the conclusion that the *Lino* holding compels. They might, to put
it plainly, prefer a situation where there is a shot at parole to one where
there is likely no shot at parole. Because the *Lino* holding is, in its most
extreme manifestation to date (such as in *Love*), so counterintuitive, it
begs the question of how the law got into this unusual posture. We believe
that at its root the problem can be traced to improper utilization of statis-
tical data from the past to predict actions in the future.

In *Lino,* this Court, harkening to the dissent in *Merriweather* and, using
some recent parole board statistics, held as a matter of law that few of
the parolable life inmates eligible for parole in the future will get it,[4] and
thus, that parolable life is a more severe penalty than a long-term indeter-
minate sentence.[5] We believe this position is flawed because the statistics
used in *Lino* are only reflective of the variables controlling the granting of
parole for the period studied. These variables will always include the
behavior of the inmates being considered, as well as the parole board's
disposition toward granting parole to lifers, which will invariably mirror,
to some extent, the policy of the then-sitting governor, the temper of the
Legislature, public opinion concerning crime, and many other factors of

---

[4] As stated in *Lino, supra* at 97-98:

[F]rom 1986 through 1990, only seven prisoners serving parolable
life sentences were paroled. Of the 975 prisoners serving such a
term in 1990, only two were paroled. In 1991, only one prisoner
serving a parolable life term was paroled. In 1992, again only one
prisoner serving a parolable life term was paroled. During the last
ten years, fifty prisoners serving parolable life sentences were actu-
ally paroled and the releases took place after the prisoners served
an average of between 15½ to 19½ years. [Citations omitted.]

[5] *Lino* also relied on the Supreme Court's statement in *People v Moore,*
432 Mich 311, 317; 439 NW2d 684 (1989), that a term of years is a lesser
penalty than life. *Lino's* reliance on this statement was misplaced, how-
ever, because another panel of this Court held in *People v Kelly,* 213 Mich
App 8, 15-17; 539 NW2d 538 (1995), that *Moore* had been overruled by
*Merriweather, supra. Kelly* was issued only one week before the *Lino*
opinion was issued and, thus, the *Lino* panel was likely not aware of the
*Kelly* panel's holding when it issued its opinion. We agree with *Kelly* and
note that *Moore's* statement that a term of years is a lesser penalty than
life is contradicted by *Merriweather's* later observation that a defendant
sentenced to life might be better off than a defendant receiving a 60- to
120-year sentence. Even if we disagreed with *Kelly,* as Judge Jansen
apparently does, we would be bound to follow it pursuant to Administra-
tive Order No. 1994-4.

that sort. These conditions quite obviously change from time to time and, thus, so will the number of paroles granted. Indeed, one only need look at the statistics not considered by the *Lino* Court to understand this. The same sources used by the *Lino* panel show that thirty paroles were granted from 1979 to 1981. Further, the *Lino* panel was also apparently unaware that twelve lifers were paroled in the first nine months of 1994. Cf. 74 Mich B J 247 (1995). Accordingly, if the *Lino* method of analysis were correct, it would have been the case, say in 1982 or even 1996, that a court embarking on an analysis of parole frequency based on past statistics likely would have reached a different conclusion than the *Lino* panel did in 1995. At the least, they would have had a very difficult time concluding, as the *Lino* panel confidently did, that parolable life was effectively life without parole. The point here is not that the *Lino* panel used bad statistics or that 1979 through 1981, or the first nine months of 1994, were better reference periods, but only that these statistics cannot be used to project into the future.

In summary, then, we make the modest point, as recent statistics validate, that it is impossible to extrapolate and predict future actions of the parole board on the basis of statistics of the sort used in *Lino* where there are a great number of now unknowable variables that will determine future decisions by the parole board. Accordingly, following, as we respectfully believe the *Lino* panel should have, the Supreme Court's statement in *Merriweather* that a defendant might be better off with a sentence of parolable life than a long term of years, we would, were it not for *Lino* and *Love*, find defendant's parolable life sentence proportionate. However, as *Lino* and *Love* require us to consider defendant's parolable life sentence as more severe than even a sixty- to ninety-year sentence, we conclude that this sentence is disproportionate and constituted an abuse of discretion.[6]

---

[6] Defendant has urged us to reach this conclusion because the sentencing guidelines for the underlying offense were only eight to twenty years. The sentencing guidelines do not directly apply to habitual offender sentences. *People v Cervantes*, 448 Mich 620; 532 NW2d 831 (1995). In *People v Gatewood*, 214 Mich App 211, 213; 542 NW2d 605 (1995), a panel of this Court held that *Cervantes* did not have four justices agreeing that the guidelines should not be applied by analogy in reviewing habitual-offender sentences and, therefore, past precedent applying the guidelines by analogy was binding. The Michigan Supreme Court peremptorily vacated this holding of *Gatewood*, issuing an order that holds as follows:

The Court of Appeals erred by holding that in *People v Cervantes*, 448 Mich 620 (1995), a majority of this Court did not agree on whether the sentencing guidelines applied to habitual offenders. In *Cervantes*, three justices held that the sentencing guidelines do not apply to appellate review of the sentences of habitual offenders. A fourth justice concurred on the basis of the view that appellate review of sentences should not extend to habitual offender sentences. Consequently, a majority of the Supreme

Defendant also contends that he was denied a fair trial because the trial court allowed a prosecution witness to testify that defendant previously had been in prison. We agree that the trial court should not have allowed this testimony, but find that the error was harmless. Before trial, the court granted defendant's motion to prevent reference to his prison record. However, during trial, the court allowed a prosecution witness to testify that he recognized defendant because defendant had spoken to him and shown him a prison identification card. The court gave a limiting instruction regarding the fact that defendant may have been in prison previously. In *People v Allen*, 429 Mich 558, 581; 420 NW2d 499 (1988), the Supreme Court stated that juries often misuse evidence of prior convictions. See also *People v Robinson*, 417 Mich 661, 664-665; 340 NW2d 631 (1983). We find that the court should have taken steps to limit this testimony to exclude evidence of the origin of defendant's identification card to foreclose any possibility that the jury would convict defendant because he previously had been in prison. *People v Wilkins*, 408 Mich 69; 288 NW2d 583 (1980); MRE 105. Nevertheless, we find that the error in admitting this evidence was harmless. The victim conclusively identified defendant as her assailant. Admission of this prejudicial evidence did not result in a miscarriage of justice. MCL 769.26; MSA 28.1096.

Defendant also contends that the trial court erred in refusing to appoint for him an expert witness in the field of eyewitness identification. We disagree.

The court did not abuse its discretion in refusing to appoint an expert in eyewitness identification. In *People v Hill*, 84 Mich App 90, 95-96; 269 NW2d 492 (1978), this Court reviewed a similar argument and concluded that the trial court had not committed error requiring reversal in excluding expert testimony regarding the process by which people perceive and remember events and how pretrial identification procedures can affect this process. We agree with this holding in *Hill* and find defendant is not

---

Court agreed that appellate review of habitual-offender sentences using the sentencing guidelines is inappropriate. [*People v Gatewood*, 450 Mich 1021 (1996).]

Thus, our review of the proportionality of defendant's sentence is made without consideration of the sentencing guidelines' range for the underlying conviction. We find a sentence that we must consider more severe than sixty to ninety years was not proportionate and, thus, an abuse of discretion. This is not to say that defendant does not merit a lengthy sentence on remand. We merely find the circumstances surrounding this offense do not place it in the most serious class with respect to the crime committed. *People v Houston*, 448 Mich 312, 319; 532 NW2d 508 (1995). Room must be left for crimes of this sort where the victim is permanently disabled, mutilated, or the like. To say nothing of the fact that this defendant's criminal history, while bad, is not as severe as others who present themselves to the sentencing court with numerous felonies thus deserving more harsh treatment than this defendant who only had one prior felony conviction. *Merriweather, supra* at 806.

entitled to any relief regarding this issue. See also *People v Sanders*, 11 Cal 4th 475, 507-510; 905 P2d 420; 46 Cal Rptr 2d 751 (1995).

A defendant is entitled to the appointment of an expert at public expense only if he cannot otherwise proceed safely to trial. MCL 775.15; MSA 28.1252. The lack of such an expert did not prevent defendant from safely proceeding to trial because he presented alibi witnesses who, if believed, would have called the victim's identification of defendant into question. Moreover, defense counsel argued that the victim's identification was not proved and that the victim had been subjected to a suggestive photographic array.

Defendant also claims that the trial court erred in declining to instruct the jury regarding the findings and studies on eyewitness identifications contained in *People v Anderson*, 389 Mich 155, 173; 205 NW2d 461 (1973). We decline to reverse on this ground. We find that the *Anderson* principles were adequately presented in the jury instruction given by the trial court. In fact, it appears that the jury instruction, CJI2d 7.8, was drafted to reflect the *Anderson* opinion. In any event, this instruction did apprise the jury of the proper considerations in determining whether to accept or reject eyewitness identifications.

Defendant next argues that the prosecutor engaged in improper questioning of witnesses and improper argument. We disagree.

Because defendant did not object at trial, appellate review is limited to situations where a curative instruction could not have eliminated any prejudice or where failure to consider the issue would result in a miscarriage of justice. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994), cert den 513 US ___ (1995). After a review of the record, we are satisfied that the prosecutor did not engage in any improper questioning or argument. Even if error is assumed, we find that a cautionary instruction could have cured any perceived prejudice. *Id.* at 687.

Defendant's convictions and sentence for his conviction of assault with intent to commit great bodily harm less than murder are affirmed. We remand for resentencing for defendant's conviction of assault with intent to rob while armed.

J. P. NOECKER, J., concurred.

JANSEN, P.J. (*concurring in part and dissenting in part*). I would follow *People v Lino (After Remand)*, 213 Mich App 89; 539 NW2d 545 (1995), not because I am bound by Administrative Order No. 1994-4, but because I believe that *Lino* correctly resolved that a parolable life sentence is a greater penalty than a long term of years. Although the majority faults the statistical analysis employed in *Lino*, the majority offers no alternative analysis of its own. Rather, the majority relies on a portion of a sentence contained in *People v Merriweather*, 447 Mich 799, 809; 527 NW2d 460 (1994), that a "defendant might be better off with a sentence of life," which was not a holding in that case. In any event, a defendant serving a parolable life term also *might not* be better off with a sentence of life because prisoners serving a sentence of life with the possibility of parole are rarely ever paroled.

In *People v Moore*, 432 Mich 311, 317; 439 NW2d 684 (1989), our Supreme Court stated that "[o]n its face, the stated penalty for second-degree murder (life, or any term of years) indicates that a term of years is a lesser penalty than life." The Supreme Court further stated that there are, therefore, two types of sentences that a judge may impose upon a person convicted of second-degree murder—a sentence of life in prison, or a sentence of a term of years less than life. *Id.*, p 319. The Court held that a sentence of a term of years must be an indeterminate sentence less than life and it must be a sentence that the defendant has a reasonable possibility of actually serving. *Id.*, p 329; accord *People v Rushlow*, 437 Mich 149; 468 NW2d 487 (1991).

Although this Court held in *People v Kelly*, 213 Mich App 8; 539 NW2d 538 (1995), that the Supreme Court's decision in *Moore* was overruled in *Merriweather*, the Supreme Court said nothing in *Merriweather* about overruling *Moore*. If the Supreme Court intended to overrule *Moore* and the substantial body of case law that has followed it in this Court, then the Supreme Court should explicitly say so.

There is nothing "counterintuitive" about holding that a term of parolable life is a longer term of imprisonment than a long term of years. If anything is counterintuitive, it is the holding that a life term is something other than a life term when the reality is that most prisoners serving a term of parolable life are never paroled. Further, the real problem with these cases is not an improper statistical analysis, but the misconception that coming under the jurisdiction of the parole board and actually being paroled are the same thing. These are actually entirely different prospects because few prisoners serving parolable life sentences are ever paroled. *Merriweather, supra*, pp 813-814 (CAVANAGH, C.J., dissenting).

Finally, I question whether *Lino* is even applicable to this case. In the present case, defendant is arguing that his sentence of life with the possibility of parole violates the principle of proportionality. Although acknowledging that the sentencing guidelines do not apply to habitual offender sentences, defendant claims that his sentence is well outside the guidelines' range of 96 to 240 months for the underlying conviction of assault with intent to rob while armed. Defendant then notes that a parolable life term constitutes just that, a life term, and that the sentence was, therefore, the longest possible that could be imposed for this conviction. Defendant does not claim that the sentencing judge was operating under a misconception of the law, as was the case in *Lino*. See *Lino, supra*, pp 95, 98. This Court intimated no opinion regarding whether the defendant's sentence of life imprisonment for second-degree murder was proportionate in *Lino*. *Id.*, p 99.

Defendant claims that his sentence of a life term is disproportionate because he was sentenced to the longest possible sentence, the offense was not the worst of its type, and he does not have the worst possible criminal history. However, I would find that defendant's sentence is proportionate in this case. Defendant was twenty-two years old when he was sentenced. He had one prior felony conviction (felonious assault), a horrendous juvenile record (sixteen juvenile adjudications according to the presentence report), and he received numerous major misconducts while

imprisoned for his felonious assault conviction. The facts of this offense are that defendant grabbed the victim by her hair and held a knife to her throat. He then pinned her against a pickup truck after demanding her money. Defendant grabbed the victim by her throat and began to unbutton her pants. The victim was able to push defendant away, but he punched her in her face with his fist. The victim was able to turn away, at which time defendant stabbed her in the back with his knife.

I would find that, notwithstanding that defendant's life sentence is the longest possible, defendant's sentence does not violate the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). The test of proportionality is whether the sentence is proportionate to the background of the offender and the circumstances surrounding the offense, not whether the sentence is the longest possible permitted by law.

I concur with the majority's decision to affirm defendant's convictions and the sentence for his conviction of assault with intent to commit great bodily harm less than murder. However, I would also affirm defendant's sentences for his conviction of assault with intent to rob while armed.