*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0420**

State of Minnesota,
Respondent,

vs.

Fredrick Fitz Gurley,
Appellant.

**Filed February 23, 2015
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-13-24478

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges the denial of his motion to suppress the evidence found in his apartment during the execution of a search warrant because the information in the affidavit for the search warrant was illegally obtained. Because we see no error in the denial of appellant's motion to suppress, we affirm.

## FACTS

On July 25, 2013, S.W. called 911 and said she had been sexually assaulted by a man, known to her as "Black," who lived in her apartment building. When police arrived at the building, S.W. told them that, when she went to Black's apartment to borrow a phone charger, he assaulted her. When she told him she did not want to have sex with him, he let her leave. She said that Black was wearing blue boxer shorts.

S.W. returned to her apartment and told her boyfriend, her mother, and her mother's boyfriend what had happened. After she called the police, the group went outside to smoke. Some of them saw Black at a window, holding an object they thought was a gun and tapping it on the window; S.W. had seen Black with a gun in the past. Black then came outside with a large butcher knife and approached the group; when the police arrived, he ran towards the side of the building, and one witness told police he thought Black returned to his apartment.

S.W. identified Black's apartment, and the police, wanting to detain him, went there and knocked on the door. No one answered, so they obtained a key from the

manager, entered, saw no one, and looked in any space in which a person could hide. No one was found.

A detective who entered the apartment to see how many officers would be needed to execute a search warrant noticed a collage hanging on the wall; it included a marriage certificate with the name of appellant Fredrick Gurley. A photograph of the person with that name was shown to S.W., who identified the person as the man she called "Black." A criminal-history search led to the information that appellant was a convicted felon.

The detective applied for a warrant to search appellant's apartment, specifically for "[a] butcher style knife with black handle and approximately six inch serrated blade; [a] semiautomatic style handgun; gun case, ammunition . . . ; blue boxer shorts with a white stripe; bedding; any hairs or biological substances . . . that could belong to the victim." The execution of the search warrant resulted in the seizure of ammunition, bedding, an ID, and an AK47 rifle from the closet.

Appellant was charged with being a prohibited person in possession of a firearm. He moved to suppress the evidence from his apartment on the ground that the search warrant had been illegally obtained. Following the denial of his motion, he waived the right to a jury trial, agreed to have his guilt determined on the basis of stipulated facts, and reserved the right to appeal from the denial of his motion to suppress.

Appellant was found guilty and sentenced to 60 months in prison. He challenges the denial of his motion to suppress.

# D E C I S I O N

Factual findings supporting the denial of a motion to suppress are reviewed under the clearly erroneous standard; legal determinations are reviewed de novo. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009).

"Warrantless searches and seizures are per se unreasonable unless permitted by one of a limited number of exceptions, including the presence of probable cause that an individual has committed a felony and exigent circumstances related to its investigation." *State v. Lussier*, 770 N.W.2d 581, 586 (Minn. App. 2009), *review denied* (Minn. Nov. 17, 2009). "To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances." *Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (2013).

"Hot pursuit" is among the circumstances considered. *United States v. Santana*, 427 U.S. 38, 42-43, 96 S. Ct. 2406, 2409-10 (1976), *cited in McNeely*, 133 S. Ct. at 1558. Here, appellant, the suspect, fled when the police arrived outside the apartment, and a witness told the police that appellant had returned to his apartment, where the felony had been committed. The police entry into the apartment was thus hot pursuit of a felon who, if not apprehended, was likely to escape, and who, if not prevented, could remove or destroy evidence. *See Lussier*, 770 N.W.2d at 587-88 (noting that evidence of sexual assault may be quickly removed by washing the body and disposing of or washing clothing and that the focus is on "a defendant's *capability* of destroying evidence").

Factors considered in the totality-of-the circumstances test include:

(a) whether a grave or violent offense is involved; (b) whether the suspect is reasonably believed to be armed; (c) whether there is strong probable cause connecting the suspect to the offense; (d) whether police have strong reason to believe the suspect is on the premises; (e) whether it is likely the suspect will escape if not swiftly apprehended; and (f) whether peaceable entry was made.

*State v. Hummel*, 483 N.W.2d 68, 72-73 (Minn. 1992). Sexual assault is a grave and violent offense; appellant had been seen with a butcher knife and was known to possess a gun; S.W. connected appellant to the offense by identifying his photograph as that of the offender; appellant had been seen on the premises; appellant could have escaped had he not been apprehended; and a peaceable entry was made with the key provided by the apartment manager. Thus, the totality-of-the-circumstances test indicates that the warrantless entry of appellant's apartment was permissible, and the district court did not err in not suppressing evidence resulting from the execution of a warrant obtained with an affidavit based on information found during that entry.

Appellant also argues that the information as to his identity, from which officers learned of his criminal record, was illegally obtained from his marriage certificate and improperly included in the affidavit for the warrant. But appellant was known to be the resident of a particular apartment, and his identity could have been obtained from the apartment manager or from his rental agreement. When police would have "inevitably discovered" information, evidence obtained through the use of that information is not excluded. "Where the initial intrusion that brings the police within plain view of . . . an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate." *State v. Campbell*, 581 N.W.2d 870,

5

871 (Minn. App. 1998) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S. Ct. 2022, 2037 (1971).

Moreover, when the detective was asked, "[I]f you hadn't found that name [i.e., appellant's name] on the wall in the apartment, would [you] have made other efforts to find who the male party living in the apartment [was]?", she answered, "Yes, I would have." When asked what she would have done, the detective said

> I could have gone back and asked our community liaison if she had a copy of the rental for the building. I could have contacted the property manager. I could have also looked in our database for previous contacts for that apartment unit to see if there was [sic] other names that I could have researched.

When asked if she would have applied for the search warrant if she had only the name "Black," the detective said "[Yes, b]ecause I had, from speaking with [S.W.], reason to believe that a crime had taken place inside of that apartment." Thus discovery of appellant's identity was inevitable. The district court's finding that the detective "testified credibly that even without learning [appellant's] criminal history and name, she would have still applied for a search warrant based on the information gathered on the scene from the victim and witnesses" is not clearly erroneous. *See Ortega*, 770 N.W.2d at 149.

Moreover, even if appellant's name and criminal history had not been legally obtained, they were not dispositive in the decision to grant a warrant; an affidavit "sanitized" of those items would still have established probable cause, and the name and criminal history did not "prompt" the warrant request. *See State v. Lieberg*, 553 N.W.2d.

6

51, 55 (Minn. App. 1996) (holding that, in determining whether evidence should be suppressed as the result of a defective warrant, a district court must ask "whether a sanitized affidavit would establish probable cause . . . [and] whether the unlawful search prompted the authorities to seek a warrant"). The district court concluded that, even without information on appellant's identity,

> officers still had probable cause [to believe] that a crime had been committed in [appellant's a]partment . . . and there was a fair probability that evidence of that crime would have been found in the apartment. Officers would have still applied for the search warrant [regardless of] any information they may have learned about [appellant] while lawfully in the apartment due to exigent circumstances.

Because the officers' entry of appellant's apartment was legal, there was no basis to suppress evidence found while executing a search warrant obtained with an affidavit based on items seen during that entry.

 **Affirmed.**