## PEOPLE v SOLOMON WASHINGTON

Docket No. 45439. Submitted May 12, 1980, at Detroit.—Decided
August 12, 1980. Leave to appeal granted, 410 Mich 868.

Defendant, Solomon Washington, was arrested on October 3,
1977. Police Sergeant Richard Davies had ordered that defen-
dant be arrested because he wanted to question defendant and
take his fingerprints in connection with a homicide investiga-
tion. Davies acknowledged at an evidentiary hearing that he
did not seek to obtain an arrest warrant because he knew he
did not have enough information to secure one. The arrest was
based on information that defendant had been attempting to
sell a television which matched the description of a television
allegedly taken from the scene of the homicide. This attempted
sale, however, may have occurred prior to the homicide. Defen-
dant was first questioned two hours after his arrest and denied
culpability, stating that he had met another man on the street,
the man had a television he wanted to sell, and that defendant
was merely trying to help him sell it. Sgt. Davies, not believing
defendant's statement, had defendant's sister, Sharon Washing-
ton, brought to the police station for questioning. Ms. Washing-
ton gave a statement indicating that defendant had confessed
to her that he had been involved in the homicide. Defendant
was then brought into the interrogation room and confronted
by his sister and the statement she had given. Defendant then
admitted to being a party to a plan to steal the victim's money
and to being in the house when the homicide occurred. This
admission was made approximately six hours after defendant's
arrest. A preliminary examination was held on October 12,
1977, and defendant was bound over for trial on a charge of
felony-murder. Motions were subsequently filed to quash the
information and to suppress statements made by defendant
after his allegedly illegal arrest. Following an evidentiary
hearing, the Recorder's Court of Detroit, Donald L. Hobson, J.,
denied defendant's motions but found that defendant's arrest

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 881.
[2] 29 Am Jur 2d, Evidence § 546.

was illegal. Defendant was then granted a stay of proceedings and filed a delayed application for leave to appeal. Leave to appeal was denied because there was no showing of a need for immediate appellate review. The Supreme Court vacated that order and remanded to the Court of Appeals as on leave granted, 406 Mich 952 (1979). The issue on appeal is whether the lower court erred in failing to suppress defendant's confession made some six hours after his illegal arrest. *Held:*

1. The trial judge did not err in finding that probable cause for the arrest was lacking.

2. The mere fact that the defendant was arrested illegally does not per se require the suppression of his subsequent confession.

3. Intervening circumstances sufficiently attenuated any causal connection between the illegal arrest and defendant's subsequent inculpatory statement so that there was no error in denying the motion to suppress.

4. It was not improper for the police, in questioning defendant, to confront him with the evidence against him.

Affirmed.

1. APPEAL — CRIMINAL LAW — EVIDENCE — MOTION TO SUPPRESS — CLEAR ERROR.

A trial court's ruling at a suppression hearing will not be overturned by the Court of Appeals unless that ruling is found to be clearly erroneous.

2. CRIMINAL LAW — CONSTITUTIONAL LAW — ILLEGAL ARREST — MOTION TO SUPPRESS — ATTENUATING CIRCUMSTANCES — ADMISSIBILITY OF EVIDENCE.

The mere fact that a defendant is arrested illegally does not per se require the suppression of a subsequent confession; the confession must be excluded from evidence, under the Fourth Amendment, only if it was obtained by exploitation of the illegal arrest, *i.e.,* if it was the product of the illegal arrest, and the focus is on the causal nexus between the illegality and the confession; intervening circumstances may sufficiently attenuate any causal connection between the illegal arrest and the subsequent inculpatory statement so that there is no error in denying a motion to suppress.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Prin-

cipal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*John C. Mouradian,* for defendant on appeal.

Before: T. M. BURNS, P.J., and R. M. MAHER and M. E. CLEMENTS,* JJ.

M. E. CLEMENTS, J. The defendant, Solomon Washington, was arrested on October 3, 1977. A preliminary examination was held on October 12, 1977, and the defendant was bound over for trial on a charge of felony murder. Motions were subsequently filed to quash the information and to suppress statements made by the defendant after his allegedly illegal arrest. Following an evidentiary hearing, the trial judge issued opinions and orders denying the defendant's motions even though he found that the defendant's arrest was illegal. The defendant was then granted a stay of proceedings and he filed a delayed application for leave to appeal which was denied by this Court on August 21, 1978, because there was no showing of a need for immediate appellate review. On May 3, 1979, the Supreme Court vacated this Court's order and remanded to this Court as on leave granted. *People v Washington,* 406 Mich 952 (1979).

On September 29, 1977, the corpse of Leon Vicinski was discovered in the deceased's apartment by his nephew, Norbert Wierszewski. The death was caused by three gunshot wounds. Homicide detectives called to investigate learned from another nephew, Michael Dwormick, the last person to see the deceased alive on September 26, 1977, that the deceased's television set was in the apartment on September 26, but not on September

---

* Circuit judge, sitting on the Court of Appeals by assignment.

29. The police learned from one John Epps that the defendant and another man, known as "Money", had approached Epps with a television set they were trying to sell which matched the description of the set missing from Vicinski's apartment. However, Epps stated that he was approached on September 24 or 25, which was prior to the time when the set in Vicinski's apartment was taken and when the murder occurred. Based on this information, the defendant was arrested on October 3, 1977, at about 4 p.m.

Police Sergeant Richard Davies first questioned the defendant around 6 p.m., two hours after his arrest. According to Davies' preliminary examination testimony, the defendant, after being informed of his *Miranda* rights, *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), made an exculpatory statement to the effect that he had met Money on the street and that Money had a television he was trying to sell. The defendant stated that he had only tried to help Money sell the television set to John Epps.

Disbelieving the defendant's denial of culpability, Davies had the defendant's sister, Sharon Washington, brought to the police station for questioning. Ms. Washington gave Davies a statement indicating that her brother had confessed to her his complicity in the murder of Vicinski. Within a few minutes after acquiring this information, Davies had the defendant brought into the interrogation room where another officer and Sharon Washington were already waiting. The defendant was again provided with the appropriate *Miranda* warnings and was then confronted with his sister's allegation. At this point the defendant made a statement in which he admitted that he and Money had planned to steal Vicinski's money. The

defendant admitted to being in the house when Vicinski was killed. This admission occurred at approximately 9:50 p.m.

The prosecution does not contest on appeal the fact that the defendant's arrest was illegal. Our review of the evidence available to Sgt. Davies, who ordered the defendant's arrest, convinces us that the trial judge did not err in finding that probable cause for the arrest was lacking. At the evidentiary hearing Davies acknowledged that he did not seek to obtain an arrest warrant because he knew he did not have enough information to secure one. Davies ordered the defendant arrested because he wanted to question him and take his fingerprints.

The issue in this case is whether the lower court erred in failing to suppress the defendant's confession made some six hours after his illegal arrest. The trial judge denied the motion to suppress, finding that the illegal detention did not negate the voluntary character of the defendant's confession. The Court will not overturn a trial court's ruling at a suppression hearing unless that ruling is found to be clearly erroneous. *People v Erskin,* 92 Mich App 630; 285 NW2d 396 (1979).

The mere fact that a defendant is arrested illegally does not per se require the suppression of a subsequent confession. In *People v Emanuel,* 98 Mich App 163, 176; 295 NW2d 875 (1980), this Court discussed the applicability of the "fruit of the poisonous tree" doctrine under *Brown v Illinois,* 422 US 590; 95 S Ct 2254; 45 L Ed 2d 416 (1975), and *Dunaway v New York,* 442 US 200; 99 S Ct 2248; 60 L Ed 2d 824 (1979):

"Under Fourth Amendment rubric, the confession must be excluded from evidence only if it was obtained by exploitation of the illegal arrest, *i.e.,* if it was the

product of the illegal arrest. *Brown v Illinois, supra,* 603, *Dunaway v New York, supra,* 216-218. The focus is on the causal nexus between the illegality and the confession, or, to put it another way, the question is whether the connection was sufficiently attenuated to permit the use at trial of the evidence obtained during the period of illegal detention: whether the statement was purged of its primary taint. *Brown, supra,* 602-604, *Dunaway, supra,* 217-218, and the cases cited therein.

"Brown sets out a number of factors which are relevant in determining the admissibility of a confession obtained while a defendant is illegally detained:

" 'The question whether a confession is the product of a free will under Wong Sun *[v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963)], must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant. The voluntariness of the statement is a threshold requirement. And the burden of showing admissibility rests, of course, on the prosecution.' (Footnotes and citations omitted.) *Brown, supra,* 603-604."

Weighing against admissibility in this case is the police conduct in arresting the defendant for the acknowledged purpose of aiding their investigation of the crime. The *Brown* Court condemned this type of investigatory detention and we add our emphatic disapproval of the police conduct in this case. However, we find that intervening circumstances sufficiently attenuated any causal connection between the illegal arrest and the defendant's

subsequent inculpatory statement so that there was no error in denying the motion to suppress.[1]

After the defendant's arrest, the defendant's sister informed the police that the defendant had admitted his complicity in the murder to her. After the defendant's sister gave her statement, there was sufficient probable cause to justify the defendant's arrest. It was not until the defendant had been confronted with his sister's statement that he confessed. Up until this point, the defendant had made one statement in which he had denied any wrongdoing. It is not improper for the police, in questioning a suspect, to confront him with the evidence against him. *People v Emanuel, supra.* Under these circumstances, the primary taint of the unlawful arrest was sufficiently attenuated by the subsequent evidence establishing probable cause so that the defendant's confession is properly admissible.

It was the influence of the defendant's sister's statement that precipitated the defendant's confession and not his illegal arrest.[2] We therefore find no error in the denial of the defendant's motions to quash the information and to suppress his confession.[3]

---

[1] We are constrained to add that not every confession obtained following an illegal arrest will be saved by the presence of intervening circumstances. *E.g., People v Martin,* 94 Mich App 649; 290 NW2d 48 (1980).

[2] In *Brown,* the defendant also did not give an inculpatory statement until after the police confronted him with certain evidence, yet the Supreme Court found the defendant's statement to be the product of his illegal arrest. However, unlike the present case, the evidence Brown was confronted with did not establish probable cause. See *Johnson v Louisiana,* 406 US 356, 365; 92 S Ct 1620; 32 L Ed 2d 152 (1972), cited by the *Brown* Court as a case involving the presence of intervening circumstances, in which the Supreme Court found that a lineup identification was not the fruit of an arguably illegal warrantless arrest when the lineup identification occurred after the defendant had been properly brought before the committing magistrate.

[3] Certain language in the trial court's opinion indicates that the

The trial court's rulings are affirmed.

trial court was of the view that the "causal connection" test established in *Brown* was no different from the traditional test for voluntariness under the Fifth Amendment. That interpretation is incorrect. Even if a confession is voluntary under the Fifth Amendment, that confession must be suppressed if it is the product of an unlawful arrest or detention. See *Dunaway v New York,* 442 US 200, 216-218. However, this Court will not reverse a lower court ruling when the correct result is reached for the wrong reason. *People v Perryman,* 89 Mich App 516; 280 NW2d 579 (1979). See also *People v Erskin,* 92 Mich App 630; 285 NW2d 396 (1979).