*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee/Cross-Appellant,

v

SHAWN DELANO BROWN,

Defendant-Appellant/Cross-
Appellee.

UNPUBLISHED
July 25, 2019

No. 337860
Calhoun Circuit Court
LC No. 2010-001368-FC

Before: GLEICHER, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals his 2010 jury trial convictions for voluntary manslaughter, MCL 750.321, and second-degree child abuse, MCL 750.136b, by way of the trial court's 2017 order that granted his motion to reinstate his direct appeal due to ineffective assistance of appellate counsel. Defendant was previously sentenced as a third-habitual offender, MCL 769.11, to 100 to 360 months' imprisonment on the manslaughter conviction and 36 to 96 months' imprisonment on the child abuse conviction. In defendant's appeal, we reverse the defendant's convictions and sentence and remand for a new trial.

The prosecution cross-appeals the trial court's March 10, 2017 Order Reissuing Judgment of Sentence that reissued defendant's 2010 judgment of sentence and reinstated defendant's direct appeal of right based on a determination that defendant received ineffective assistance of appellate counsel. In the prosecution's cross-appeal, we affirm.

## I. BACKGROUND

Defendant's convictions stem from the death of his five-month old son. Defendant was the primary caretaker of his son while the child's mother worked. On January 22, 2010, defendant told law enforcement and family members that while feeding his son, the child started choking. He patted him on the back, and the choking did not stop. He patted harder, and the child stopped breathing. Prior to this incident, the child was healthy. A family friend drove defendant and the child to the hospital. The child was later transported by ambulance to a children's hospital.

-1-

Defense counsel, who was retained, filed a pretrial motion for funds for a court appointed expert to counter the testimony from the prosecution's medical experts and to present an alternative cause for the child's death. The court found that defense counsel's motion, as written, was insufficient to justify the appointment of funds essentially to find out whether an expert would be necessary. The court ruled that it was not convinced that the court was required to expend funds for this purpose and it denied the motion.

At trial, radiologists and emergency physicians testified that the child suffered injury to his lungs, dilated pupils, retinal hemorrhaging, and subdural hematomas. Medical experts testified that the child's injuries were consistent with both abusive head trauma (AHT) and non-accidental head trauma because there was nothing provided in the child's history that could account for his injuries. A forensic pathologist testified that the child's cause of death was traumatic brain injury. The pathologist further testified that bleeding in the back of the eye was an indication of injury, but "[t]he exact mechanism of how that happens is still somewhat uncertain[.]" The pathologist opined that all of the child's injuries resulted from impact, that shaking was a potential mechanism and that if she were to attach a syndrome to this, it would be "Shaken-Impact Syndrome." Defendant presented no witnesses and he was found guilty of the crimes charged. This Court affirmed defendant's convictions on appeal. *People v Shawn Delano Brown*, unpublished opinion per curiam of the Court of Appeals, issued January 24, 2012 (Docket No. 300939).

In February 2017, the trial court found that defendant was denied his right to counsel for his appeal by right when appellate counsel submitted defendant's appeal brief without reviewing a significant portion of the trial record. The neglected August 13, 2010 trial transcript included testimony from the forensic pathologist regarding the cause of death and from the child's primary care physician. The court concluded appellate counsel could not have provided meaningful appellate review of the trial court record without this transcript. In May 2017, defendant moved in the trial court for a new trial or an evidentiary hearing under MCR 7.208(B). The court subsequently denied defendant's request and in August 2017, defendant filed a timely motion to remand for a *Ginther*[1] hearing with this Court that argued the trial court gave no substantive reason for denying relief and for declining to hold an evidentiary hearing. We granted the motion and retained jurisdiction. *People v Brown*, unpublished order of the Court of Appeals, entered September 20, 2017 (Docket No. 337860). After holding the required hearing in January 2018, the trial court denied defendant's motion for a new trial. In August 2018, defendant filed a Supplemental Brief for this Court's review that challenged the trial court's original denial of his motion for expert funds, the effective assistance of his counsel to obtain a trial expert, and the trial court's denial of a new trial on remand after defendant's evidentiary hearing. These are the issues now before the Court.

## II. EXPERT WITNESS FUNDS

## A. STANDARD OF REVIEW

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

We review constitutional challenges, *People v McCuller*, 479 Mich 672, 681; 739 NW2d 563 (2007), and questions of statutory interpretation de novo, *People v Anstey*, 476 Mich 436, 442; 719 NW2d 579 (2006).

We review the trial court's decision on a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). We also review the trial court's denial of expert funds for an abuse of discretion. *People v Carson*, 217 Mich App 801, 807; 553 NW2d 1 (1996), readopted in pertinent part by a special panel in *People v Carson*, 220 Mich App 662, 678; 560 NW2d 657 (1996). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

## B. ANALYSIS

Defendant argues that the trial court abused its discretion in denying his 2010 pretrial motion for funds for an expert witness on three grounds: 1) The trial court's evaluation of defendant's request under MCL 775.15 was an error of law; 2) The trial court erroneously determined that defendant was not indigent; and 3) The trial court's refusal to grant expert witness funds interfered with defendant's constitutional right to the effective assistance of counsel.

In 2010, courts reviewed a defendant's request for public funds for an expert under MCL 775.15. That statute provided that,

> If any person accused of any crime or misdemeanor, and about to be tried therefor in any court of record in this state, shall make it appear to the satisfaction of the judge presiding over the court wherein such trial is to be had, by his own oath, or otherwise, that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to a trial, giving the name and place of residence of such witness, and that such accused person is poor and has not and cannot obtain the means to procure the attendance of such witness at the place of trial, the judge in his discretion may, at a time when the prosecuting officer of the county is present, make an order that a subpoena be issued from such court for such witness in his favor, and that it be served by the proper officer of the court. And it shall be the duty of such officer to serve such subpoena, and of the witness or witnesses named therein to attend the trial, and the officer serving such subpoena shall be paid therefor, and the witness therein named shall be paid for attending such trial, in the same manner as if such witness or witnesses had been subpoenaed in behalf of the people. [MCL 775.15].

The trial court also had at its disposal the decisions in *People v Jacobsen*, 448 Mich 639; 532 NW2d 838 (1995), and *People v Tanner*, 469 Mich 437; 671 NW2d 728 (2003). In order to be entitled to public funds for an expert witness, *Jacobsen* interpreted MCL 775.15 to require indigent defendants to "show a nexus between the facts of the case and the need for an expert." *Id*. at 641 (citation omitted). Later in *Tanner*, the Court added that a defendant needed to show the expert would benefit the defense and held that it was insufficient for defendant to show a mere possibility that the expert would be helpful. *Id*. at 442-443.

*People v Kennedy*, 502 Mich 206; 917 NW2d 355 (2018), overruled *Jacobsen* and *Tanner*, and held that MCL 775.15 does not apply to an indigent defendant's request for expert funding. It held that the request was instead controlled by the law from *Ake v Oklahoma*. Under *Ake*, courts were to determine entitlement to an expert using the reasonable probability standard from *Moore v Kemp*, 809 F2d 702 (CA 11, 1987). The *Ake* Court held that by its express terms, MCL 775.15 applied to the court's assistance in subpoenaing witnesses for the defense and not the grant of public funds to the defendant for expert witnesses. *Kennedy*, 502 Mich at 222. It further found that the statute did not meet the constitutional standard from *Ake* that required the assistance of an expert for uses beyond trial testimony and, additionally, for the preparation and presentation of a defense. *Id.* at 223. It overruled *Jacobsen* and *Tanner* to the extent that they held MCL 775.15 was applicable to the indigent defendant's request for expert funds. *Kennedy* also noted that neither *Jacobsen* nor *Tanner* considered *Ake*. *Id.* at 225. Looking forward, the Court considered the standard to which defendant would be held in order to be successful in his request for an expert. The Court adopted the standard from *Moore v Kemp*, *supra*. Under *Moore*, an indigent "defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." 809 F2d at 712. According to *Moore*, to meet this threshold,

> [A] defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand. Rather ... a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, such as insanity, he must demonstrate a substantial basis for the defense, as the defendant did in *Ake*. In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed. In addition, the defendant should inform the court why the particular expert is necessary. We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide. We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case. [*Kennedy*, 502 Mich at 227 quoting *Moore*, 809 F2d at 712.].

-4-

At defendant's 2010 motion hearing for funds for an expert, the court cited two reasons for denying defendant's motion. The first was that defendant's request was untimely. The court noted that it was obvious from the filing of the complaint that this case was going to involve experts and it concerned the court that defendant was asking for one so late. The second reason was that defendant failed to demonstrate that Dr. Laurence Simson would be helpful. The court noted that this second reason would have applied even in the instance where defense counsel was appointed. The court found that defendant's request failed to demonstrate something more than a mere possibility of assistance from the requested expert. Neither of these reasons suggest, as defendant argues, that the court denied defendant's request based on the fact that defense counsel was retained. In 2018, on remand from this Court, the trial court upheld its 2010 decision. It again noted that defendant failed to demonstrate anything more than a mere possibility of assistance from an expert or that a material expert in his favor existed within the jurisdiction of the court.

The court's 2018 opinion and order also analyzed defendant's request for expert funds under MCL 775.15 despite *Kennedy* having been decided at the time of the opinion's drafting. Despite the holding from *Kennedy* that requests like defendants are no longer to be decided under MCL 775.15, *Moore* retained some of the same requirements of the statute. The *Moore* standard eliminated the need for counsel "to provide the court with a detailed analysis of the assistance an appointed expert might provide." *Moore*, 809 F2d at 712. However, *Moore* does ask a defendant to "demonstrate something more than a mere possibility of assistance from a requested expert" and to "show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Id*. This trial court's 2010 decision on the defendant's motion and 2017 opinion on remand, although it examined the issue under MCL 775.15, decided defendant's request for expert funds under principles maintained in *Moore*. Therefore, the trial court's evaluation of defendant's request under MCL 775.15 was not an error of law.

The trial court also did not abuse its discretion when it denied defendant's motion for expert witness funds. Defendant's motion contained 12 points and was without an accompanying brief. The motion stated that the charge against the defendant concerned unexplained injuries in the form of head trauma and that prosecution's case rested largely on technical testimony from medical experts. It stated that defendant "is in need of assistance of an expert to counteract the testimony of prosecution experts" and "expects to be able to name the doctor and the amount required at hearing." At the July 26, 2010 motion hearing, defense counsel stated that after meeting with other forensic pathologists, he was referred to Dr. Simpson[2]. Defense counsel stated that the court was aware of Dr. Simpson from his previous testimony for the prosecution. Counsel relied on Dr. Simpson's curriculum vita and fee schedule when he asked for $3,000 to cover the doctor's retainer. Missing from defense counsel's motion and argument was whether this expert would be of assistance to the defense. There was no demonstration of more than the mere possibility of assistance from the requested expert, which was a requirement under MCL 775.15 and *Moore*. At the post-remand evidentiary hearing, defense counsel confirmed that he had no expert to aid the defense when he testified that Dr.

---

[2] Simpson is also referred to as Simson by the parties.

Simpson ultimately agreed with the forensic pathologist's findings and was not comfortable with testifying against the forensic pathologist because he had trained her. Neither the court nor the parties were oblivious to the important role an expert would play in defendant's case. However, under the facts as they were presented to the court, its decision to deny defendant's motion was not outside the range of reasonable and principled outcomes.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011), citing *People v Grant*, 470 Mich 477, 481; 684 NW2d 686 (2004). We review the trial court's findings of fact for clear error. *Armstrong*, 490 Mich at 289; MCR 2.613(C), 6.001(D). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). "Questions of constitutional law are reviewed by this Court de novo." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

We review the trial court's decision on a motion for a new trial for an abuse of discretion. *Cress*, 468 Mich at 691. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

### B. ANALYSIS

To prove ineffective assistance of counsel, defendant must show that "(1) counsel's performance was below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, if not for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). "[E]ffective assistance of counsel is presumed[.]" *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

### 1. FAILURE TO SECURE FUNDS FOR AN EXPERT

Defendant argues that trial counsel was ineffective for failing to make the proper showing to secure funds for an expert. He further argues that counsel's failure prejudiced him by denying him an expert at trial. We agree.

In *People v Ackley*, 497 Mich 381; 870 NW2d 858 (2015), the three-year-old daughter of defendant's girlfriend died while in defendant's care. At trial, the defendant argued that the child's death was the result of her fall from the bed, while the prosecution presented experts who testified that the child died from an abusive head injury that was caused by non-accidental shaking, blunt force trauma or both. Defense counsel was initially given $1,500 to retain an expert witness. He engaged one expert witness who specifically told him that he did not believe

the defense theory was possible and gave him the name of another expert who would support defendant. Defense counsel never contacted the other expert or any other expert.[3] The defendant was found guilty. On appeal, he argued his trial counsel was ineffective for failing to "meaningfully challenge the prosecution's expert testimony regarding the cause of the child's death[.]" *Id*. at 384-385. Defense counsel testified at the evidentiary hearing, that he only contacted one expert who indicated that he was "not the best person" for the defense. *Id*. at 358. The Court held "defense counsel's failure to attempt to engage a single expert witness to rebut the prosecution's expert testimony," and his failure "to consult an expert with the scientific training to support the defendant's theory of the case, fell below an objective standard of reasonableness, and created a reasonable probability that this error affected the outcome of the defendant's trial." *Id*. at 383. It further held that

> In this case involving such "substantial contradiction in a given area of expertise," counsel's failure to engage "expert testimony rebutting the state's expert testimony" and to become "versed in [the] technical subject matter" most critical to the case resulted in two things: a defense theory without objective, expert testimonial support, and a defense counsel insufficiently equipped to challenge the prosecution's experts because he possessed only Dr. Hunter's reluctant and admittedly ill-suited input as his guide. [*Id*. at 393].

Similarly, defense counsel here failed to engage or consult with an expert witness "versed in [the] technical subject matter" to rebut the prosecution's expert testimony. He spoke with a friend whose expertise was vascular surgery and two local AHT experts who supported the prosecution's theory of the case. He made no further inquiry and failed, for example, to contact the State Appellate Defender Office to find other experts. At the evidentiary hearing, defense counsel testified that other than a lack of funds, he had no strategic reason for not calling an expert. Defense counsel's failure to identify and consult with an expert to support the defendant's theory of the case made him unprepared to seek medical expert funds from the court.

The failure to properly articulate the basis for an expert and failure to consult, seek other resources, or call an expert amounted to ineffective assistance of counsel and was outcome determinative. The prosecution presented eight medical experts most of whom presented testimony that was heavily laden with medical terminology and complex medical processes. They collectively gave testimony that Shawn, Jr. had suffered non-accidental AHT and the prosecution's theory was that defendant was the baby's only caretaker at the time of injury and the baby was healthy up until the time of injury. Defense counsel's cross-examination of the witnesses was less than effective with counsel asking what certain medical terms meant in a manner which seemed designed as much to educate himself as it was intended to persuade or educate the jury. He posed multiple hypotheticals that were rejected by the experts and offered no record basis for those hypotheses. In contrast, the experts presented at the remand hearing and by affidavit offered alternative analyses of the child's disease progression and its etiology.

---

[3] *People v Ackley*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2014 (Docket No. 318303).

On appeal, defendant presents the affidavits of doctors Mark Shuman and Scheller. Dr. Scheller also testified at defendant's evidentiary hearing on remand. Dr. Shuman opined,

> [a]fter completing my review, I conclude that Shawn Jr. had a chronic subdural hematoma, most likely caused by a traumatic injury, which was present at least a week before his death on January 24, 2010. I also conclude that Shawn Jr.'s chronic subdural hematoma re-bled, which caused an increase in intracranial pressure, which resulted in a fatal restriction of the flow of blood and oxygen to his brain. A re-bleed could have been spontaneous or it could have been caused by a minor trauma, such as choking on formula or coughing. Whatever trauma occurred, it is not scientifically possible to definitively conclude whether the trauma was intentional or accidental, or exactly when it happened.

At the evidentiary hearing, Dr. Scheller testified Shawn, Jr. had a chronic subdural hematoma that spontaneously re-bled causing bleeding on the surface of the brain, disruption in circulation, "seizures, collapse, and ultimately his death." Shawn, Jr.'s chronic subdural hematoma was documented in medical records. This documentation, coupled with either doctor's testimony, would have provided support for the defense theory and given the jury another plausible option to consider as to Shawn, Jr.'s cause of death. Beyond their trial testimony, these doctors could have fully equipped a defense counsel with the medical understanding of the opinions of the prosecution's experts, and equip counsel to challenge their opinions and points of weakness. There is a reasonable probability that had defendant been armed with an expert of his own, the outcome of his trial would have been different. The trial court's finding that defense counsel performed reasonably was clearly erroneous.

The prosecution has submitted to this Court a *Consensus Statement on Abusive Head Trauma in Infants and Young Children*, Pediatric Radiology, Arabinda Kumar Choudhary, et al. (April 2018), as supplemental authority. The prosecution argues that the Consensus Statement is evidence that there is no controversy concerning the medical validity of the existence of shaken baby syndrome or abusive head trauma. From this statement, the prosecution argues that defendant cannot show that he was convicted based on scientific evidence that was fundamentally flawed, irresponsible and misleading. The prosecution misunderstands the defense argument. Defendant contends that he does not contest the existence of abusive head trauma, only whether abuse is the only possible diagnosis in this case.

The Consensus Statement is informative, but not dispositive of whether defendant should be allowed to question the AHT diagnosis involving his son. Further, it does not close the debate on whether the injuries suffered by a particular child are the result of AHT or some other possible cause, nor does it solve who caused those injuries.[4]

## 2. FAILURE TO STATE THE PROPER BASIS TO EXCLUDE EVIDENCE

---

[4] See for example, Keith A. Findley, et al, Feigned Consensus: Usurping the Law in Shaken Baby Syndrome / Abusive Head Trauma Prosecutions, (University of Wisconsin Law School Legal Studies Research Paper Series No. 1461) (available at https://ssrn.com/abstract=3328996).

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). " 'A substantial defense is one that might have made a difference in the outcome of the trial.' " *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009), quoting *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

At trial, defense counsel wanted to play Reinstein's recorded interview of defendant during Reinstein's testimony to impeach the testimony of Reinstein that defendant was "laid back," and to contradict other testimony presented by the prosecution that defendant was apathetic to his son's condition. Counsel stated, "Your Honor, at this time I'd like to play that CD and I guess I need to admit it some way." At first, the prosecution had no objection to the recording, but after a recess stated that it was inadmissible hearsay under MRE 801(d)(2) because it was not being offered against an opposing party. Defense counsel unsuccessfully argued for admission under MRE 801(d)(2), MRE 803(24), and MRE 803(2). In its ruling to exclude, the court explained to defendant that the audio recorded statement was not subject to cross-examination whereas defendant was present and could testify to the statement and be subject to cross-examination. The court held that the recording was hearsay offered for the truth of the matters asserted and there was no exception to grant its admissibility. The court informed the jury that the CD was inadmissible and would not be played. The jury was instructed not to speculate what may or may not have been on the recording.

Defense counsel was unprepared to admit the recording that was integral to his strategy to present the defendant as a loving parent who could not harm his son. An argument could have been made for admission of the recording in whole or in part under MRE 803(3). Under that exception to the hearsay rule, "statement[s] of the declarant's then-existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" can be admitted. MRE 803(3). Defense counsel had no plan for its admission and unreasonably relied on the acquiescence of the prosecutor. Such performance was deficient.

In *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court established a "reasonable probability" standard for determining prejudice due to an attorney's ineffective performance. Under that standard, defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case," but rather must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 693-694. See also *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).

We acknowledge that defendant's response to Shawn, Jr.'s death would have changed his character before the jury, but not the medical testimony. But, the *relevant* question is whether the trial was "fundamentally unfair" or the jury's verdict "unreliable." The context of counsel's failure to admit the audiotape highlights the unfairness of defendant's trial and the unreliability of the verdict.

The prosecution presented the testimony of James Snider, a Children's Protective Services worker who interviewed defendant in the baby's hospital room, where the unconscious child lay, breathing on a ventilator. According to Snider, defendant was "pretty lighthearted" during their conversation, "bouncing around on his feet, smiling, kind of laughing with us." Snider agreed with the prosecutor's suggestion that at some point, he and defendant exchanged "fist-bumps." Although defendant occasionally interacted with his child, Snider claimed, "[t]here wasn't a lot of emotionality to it." To counteract this devastating testimony the defense called two witnesses: Nadine Brown, defendant's mother, and Reinstein, who had informed defendant of his son's death in the conversation memorialized in the audiotape. Nadine testified that she could tell that her son was "distraught and worried" about the baby's condition, despite that he usually did not "show emotions," and never had. Counsel next called Reinstein and successfully laid a foundation for the admission of the audiotape. However, as discussed, the tape was initially admitted, then excluded by the court based on it being hearsay. The jury also heard the court's instruction that it was forbidden from speculating about the tape's contents. Thus, the jury heard one account of the defendant's demeanor in this time of crises from his mother, an arguable biased witness, and a completely different version of his emotional affect from a perceived neutral observer. The tape was the unheard third "witness."

In evaluating prejudice we note that despite the number of prosecution witnesses including experts and their unified position that defendant had deliberately shaken his baby so violently as to cause a severe brain injury, the jury rejected that defendant had committed murder and instead convicted him of voluntary manslaughter and second, rather than first-degree, child abuse.

The touchstone for prejudice is a reasonable probability of a different result. Counsel failed to articulate the basis for admission of the tape showing the defendant's affect upon hearing what for most would be devastating news. Had the jury learned that defendant was emotionally overcome on hearing of his son's death, a reasonable probability exists that the jury would have concluded that defendant lacked *any* intent to kill or seriously injure his child.

Trial counsel's twin errors of failing to articulate the basis for expert witness funding coupled with defense counsel's failure to secure admission of the videotape seriously undermine our confidence in the outcome of this case. Defense counsel had no strategy for obtaining an acquittal other than his superficially informed cross-examination and his largely unsuccessful effort to prove that defendant was a good man. As discussed elsewhere in this opinion, other evidence existed that the child's brain injury was not caused by trauma. It is reasonably probable that but for counsel's errors an entirely different trial would have unfolded.

## IV. ADDITIONAL CLAIMS OF RELIEF

### A. STANDARD OF REVIEW

We review constitutional issues, *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003), and the interpretation and application of statutes de novo, *People v Al-Saiegh*, 244 Mich App 391, 394; 625 NW2d 419 (2001).

"We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628–629; 794 NW2d 92 (2010) (internal citation omitted). We also review for an abuse of discretion the trial court's decision on a motion for a new trial. *Cress*, 468 Mich at 691. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217. "A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake." *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011).

B. ANALYSIS

1. ACTUAL INNOCENCE

Defendant argues that he is also entitled to relief because he is actually innocent. "Generally, to relieve a defendant from a judgment of conviction, a defendant must prove 'good cause' and 'actual prejudice,' MCR 6.508(D)(3), but if the trial court concludes that there is a 'significant possibility' that the defendant is innocent, the court may waive the 'good cause' requirement." *Swain*, 288 Mich App at 639. To establish actual innocence, the defendant "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v Delo*, 513 US 298, 327; 115 S Ct 851; 130 L Ed 2d 808 (1995). Defendant's claim of actual innocence is based on his determination of the validity of the medical evidence used to convict him. He argues that he presented "compelling scientific evidence that shows that the symptoms his son presented could have been the result of any number of causes other than abuse." In its opinion and order after remand, the trial court found that Dr. Scheller's testimony regarding an alternative diagnosis did not establish that no reasonable juror would find the defendant guilty and held that actual innocence was not shown by the mere possibility that the injuries resulted from another cause. We agree. Dr. Scheller's testimony, had it been admitted in this trial, would not have proved defendant's innocence, although it might have undermined the credibility of the testimony from the prosecution's experts. We too cannot say that based upon Dr. Scheller's testimony that no reasonable juror could have found the defendant guilty.

Further, MCR 6.508 was modeled after federal habeas corpus law, *People v Reed*, 449 Mich 375, 379-380; 535 NW2d 496 (1995), and current habeas law does not recognize a freestanding claim of actual innocence. See *Herrera v Collins*, 506 US 390, 400; 113 S Ct 853; 122 L Ed 2d 203 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

2. MCL 770.1

Defendant also argues that he is entitled to relief under MCL 770.1 because the trial errors in his case resulted in an "unfair fight." MCL 770.1 provides that "[t]he judge of a court in which the trial of an offense is held may grant a new trial to the defendant, for any cause for which by law a new trial may be granted, or when it appears to the court that justice has not been done, and on the terms or conditions as the court directs." This is a different version of the argument presented in Issue III regarding defendant being denied in one form or the other the

assistance of a medical expert at trial. We have already addressed the issue of defendant's claim for funds for a medical expert and recommended that defendant receive a new trial on that basis.

## V. RELIEF FROM JUDGMENT

### A. STANDARD OF REVIEW

"We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *Swain*, 288 Mich App at 628–629 (internal citation omitted). A trial court abuses its discretion when it misapprehends the law to be applied. *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). "A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake." *Steele*, 292 Mich App at 313.

The interpretation of a court rule is a question of law that is reviewed de novo. *People v Hawkins*, 468 Mich 488, 497; 668 NW2d 602 (2003).

### B. ANALYSIS

In August 2016, defendant filed a motion seeking reissuance of his judgment of sentence and reinstatement of his direct appeal under *Cronic* or in the alternative, relief from judgment under MCR 6.500. In February 2017, the trial court granted relief under *Cronic*, finding that "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing" thereby denying defendant his Sixth Amendment right to counsel which made "the adversary process itself presumptively unreliable." In its cross-appeal, the prosecution argues that *US v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), was inapplicable to defendant's case where defendant was not denied the complete assistance of appellate counsel, and that the court should have reviewed defendant's motion under MCR 6.508 and denied relief.

"If the defendant is no longer entitled to appeal by right or by leave, the defendant may seek relief pursuant to the procedure set forth in subchapter 6.500." MCR 6.431(A)(4). "The defendant has the burden of establishing entitlement to the relief requested." MCR 6.508(D). The defendant is not entitled to relief if the motion

> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
>
> (i) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal[.] [MCR 6.508(D)(3)].

" 'Good cause' can be established by proving ineffective assistance of counsel." *People v Kimble*, 470 Mich 305, 314; 684 NW2d 669 (2004).

Generally, claims of ineffective assistance of counsel are reviewed under the *Strickland* standard, which this Court adopted in *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994), and requires a reviewing court to determine "(1) whether counsel's performance was objectively unreasonable, and (2) whether the defendant was prejudiced by counsel's defective performance." *People v Mitchell*, 454 Mich 145, 164; 560 NW2d 600 (1997). However, in *Cronic*, 466 US at 659-662, the United States Supreme Court identified "three rare situations in which the attorney's performance is so deficient that prejudice is presumed." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). The first situation was when the defendant was completely denied counsel at a critical stage of trial by either counsel being "totally absent" or when counsel was "prevented from assisting the accused." *Cronic*, 466 US at 659 n 25. The second situation arises "when counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing[.]" *Id*. at 659. The third situation is a circumstance where, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id*. at 659-660.

In *Bell v Cone*, 535 US 685; 122 S Ct 1843; 152 L Ed 2d 914 (2002), the Supreme Court defined the failure to subject the prosecution's case to meaningful adversarial testing:

> When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, *supra*, at 659, 104 S.Ct. 2039 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind. [*Bell*, 535 US at 696-697].

In other words, "[t]he *Cronic* test applies when the attorney's failure is complete, while the *Strickland* test applies when counsel failed at specific points of the proceeding." *Frazier*, 478 Mich at 244.

The trial court determined that appellate counsel's failure to secure the transcript of one day of trial testimony that included significant medical expert testimony constituted a complete failure to subject the prosecution's case to adversarial testing. We disagree. Appellate counsel did not obtain and review a transcript on appeal, but otherwise filed a timely brief that presented two meritorious issues that challenged the defendant's sentences regarding double jeopardy and offense variable scoring. Appellate counsel's failure to submit defendant's brief without benefit of the whole record is but one allegation of a specific appellate error. Defendant argues that counsel failed to test the prosecution's case on the point of medical testimony and not throughout the entire appellate proceedings. *Cronic* does not require that defense counsel subject the prosecution's entire case to meaningful adversarial testing. Defendant fails to establish the factual predicate of his claim where appellate counsel took some action to subject the

prosecution's case to meaningful adversarial testing. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Consequently, a showing of prejudice under *Strickland* was necessary and the trial court's finding that defendant was entitled to relief under *Cronic* and decision to forgo a discussion of prejudice were erroneous. "However, this Court will not reverse a lower court ruling when the correct result is reached for the wrong reason." *People v Washington*, 99 Mich App 330, 336 n 3; 297 NW2d 915 (1980). Defendant's *Cronic* claim fails, but he is still entitled to relief under MCR 6.508(D).

The prosecution argues that defendant's claim of relief under MCR 6.508(D)(3), also fails where defendant cannot demonstrate good cause (or ineffective assistance of appellate counsel) and actual prejudice. According to MCR 6.508(D)(3)(b)(i), "actual prejudice" means that "in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal[.]"

The prosecution contends that appellate counsel was not ineffective for failing to raise the additional issues of expert funding and the January 24 audio recording because counsel strategically chose to raise other issues. "An appellate attorney's failure to raise an issue may result in counsel's performance falling below an objective standard of reasonableness if that error is sufficiently egregious and prejudicial." *People v Reed*, 198 Mich App 639, 646; 499 NW2d 441 (1993), aff'd 449 Mich 375 (1995). Appellate counsel is not required to argue every conceivable issue on appeal. *Jones v Barnes*, 463 US 745, 749; 103 S Ct 3308; 77 L Ed 2d 987 (1983). Appellate counsel's selection of which issues to raise on appeal are matters of professional judgment and presumed to be trial strategy that this Court will not second-guess. *People v Reed*, 449 Mich 375, 391; 535 NW2d 496 (1995); *Simko v Blake*, 448 Mich 648, 658; 532 NW2d 842 (1995). Here, appellate counsel was in receipt of all other transcripts and specifically chose not to address the issues of expert funding or the audio recording. This strategic decision constitutes ineffective assistance where, as decided in Issue III, defendant was prejudiced by the failure to obtain funds for a medical expert and the exclusion of the audio recording, and appellate counsel overlooked these issues. Accordingly, defendant was entitled to relief from judgment where he established both good cause and actual prejudice under MCR 6.508(D)(3).

Affirmed in part, reversed in part and remanded for a new trial. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens